[Crim. No. 6775. Fourth Dist., Div. One. Jan. 15, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
ERNEST PATRICK ESQUIBEL, Defendant and Respondent.

## COUNSEL

Edwin L. Miller, Jr., District Attorney, Terry J. Knoepp and F. Dale Marriott, Deputy District Attorneys, for Plaintiff and Appellant.

Robert J. Nareau, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**BROWN (Gerald), P. J.**—As a result of his involvement in a riot at the El Monte County Park, a lovely picnic ground in the east greater San Diego area, defendant Ernest Patrick Esquibel was convicted by a jury of several felonies and misdemeanors, including assault with a deadly weapon (Pen. Code, § 245, subd. (b)), riot (Pen. Code, §§ 404, 405), assault (Pen. Code, § 240), resisting arrest (Pen. Code, § 148), malicious mischief (Pen. Code, § 594), and resisting a peace officer (Pen. Code, § 69). He received three years probation on July 31, 1972.

Two and one-half years later Esquibel petitioned for a writ of error *coram nobis* in the superior court to overturn the conviction of assault with a deadly weapon (Pen. Code, § 245, subd. (b)).

At the criminal trial held about three months after the incident, the victim of the assault, Officer P. C. Scott, testified he thought Esquibel had intentionally hit him with the pickup truck Esquibel was driving, thus causing Scott to be thrown upon its hood and seriously injured. About two years later, in connection with a civil suit which Scott had brought against Esquibel to recover for his personal injuries, Scott talked with Reserve Officer Rizzo, an eyewitness to the incident. Rizzo told Scott Esquibel was not looking at Scott when the truck hit him. When Scott's deposition was taken as part of the civil action he then testified that in his opinion, based on what Rizzo had said, Esquibel had only been negligent in driving the truck. This variance in the victim's testimony was the basis for the writ of *coram nobis,* filed shortly after Scott's deposition, which suggested there was fraud or mistake in the earlier criminal trial. The trial court treated the petition as one for habeas corpus and granted the writ in the interest of justice, to correct the record, by striking the conviction of assault with a deadly weapon, but leaving the other felony and misdemeanor convictions intact. The People appeal the order, contending there is no form of relief available to Esquibel under these circumstances. As commendable as the superior court's motives are to arrive at substantial justice, it appears the People are correct.

At the outset, the People question the jurisdiction of the superior court in ordering Esquibel's conviction set aside. However, after stating this issue, the People do not offer any discussion or support for their contention. Where, as here, the final judgment has not been appealed, the petition was properly lodged with the trial court (see Pen. Code, § 1265; *People* v. *Reid,* 195 Cal. 249, 254 [232 P. 457, 36 A.L.R. 1435]).

██ The People next complain the requirements for granting relief by writ of *coram nobis* have not been satisfied. For this relief, Esquibel must show there is some new fact which is not of record and does not go to the merits of the issues. In addition, a defendant cannot have known of the error at the time of trial and the fact, if it had been known, must have been one which would have resulted in a different verdict (*People* v. *Shipman*, 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993]). ██ Here, the new fact is Rizzo's account that Esquibel was not looking at Scott when the truck struck him. Rizzo testified at the original criminal trial, and neither party asked him which way Esquibel was looking at the time of impact. If this fact had been brought out, however, it would have been but one of several factors to be considered by the jury in determining Esquibel's intent. If the fact was not known by defendant at the trial, it could have been; if the fact had been disclosed at trial, the verdict would not necessarily have been different. Thus, there is no basis for granting the writ of *coram nobis*.

Esquibel then suggests Scott's change of opinion is a basis for relief. At the criminal trial on July 5, 1972 Esquibel's attorney, cross-examining Scott, asked: "Is it your opinion that Mr. Esquibel deliberately ran into you?" No objection was voiced to this question, which invaded the province of the jury. Scott answered: "I believe he did, sir." In contrast, at Scott's deposition on October 22, 1973 the following exchange took place:

"Q. Has anything happened since [the trial]. . . which would tend to make you change your. . . opinion as to the nature of Mr. Esquibel's actions?

"      .      .      .      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"A. Officer Rizzo stated that Esquibel was looking back . . . when he struck me.

"      .      .      .      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"Q. Based on what you now know, do you have an opinion as to whether . . . Mr. Esquibel's actions . . . were . . . intentional . . . or through inadvertence. . . ?

"A. [My opinion is] it was entirely accidental and negligent."

The allegedly contradictory testimony of Scott involves his opinions, not facts. Forming a new opinion based on a recently learned fact which could have been brought out at trial is not a basis for relief under *coram nobis.*

Relief may, however, be granted if the new fact was not discovered at the time of trial due to duress, fraud or excusable mistake (*People* v. *Tuthill,* 32 Cal.2d 819, 821 [198 P.2d 505]). Here there is no allegation of duress. Esquibel contends there was fraud but he does not show any facts to back up his claim. There is no indication Rizzo purposely concealed from the court his observation where Esquibel was looking; there is no indication Scott or the prosecution did so either. Both parties knew Scott had filed a civil claim; both sides knew Rizzo was an eyewitness to the incident; either side might have inquired more closely what Rizzo observed. Was this excusable mistake? A finding that Esquibel intentionally hit Scott with the truck is a necessary prerequisite to sustain the criminal conviction. The direction in which Esquibel was looking at the time he struck Scott is one factor in determining this intent. Both parties knew this and had the opportunity to question or cross-examine the victim as well as other eyewitnesses. If there was a mistake here it was one of trial tactics which the appellate court will not review. (See *People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].)

The traditional distinctions among extraordinary writs have broken down and they often overlap. "On a proper showing the court will grant the relief deemed appropriate, regardless of the prayer of the petition." (Witkin, Cal. Criminal Procedure (1963), § 771.)

In order to gain relief by writ of habeas corpus Esquibel tries to show there was perjury which was known to the prosecution and would have affected the trial's outcome (*In re Imbler,* 60 Cal.2d 554, 560 [35 Cal.Rptr. 293, 387 P.2d 6]). Esquibel suggests the prosecution was obligated to ask Rizzo which way he, Esquibel, was looking. However, he gives us no authority for such a proposition and we know of none to support it. Esquibel further contends he did not know nor could he have known that from Rizzo's observations one could infer that he, Esquibel, was only negligent. Esquibel, however, overlooks that he could have asked Rizzo what he saw, especially since Rizzo was an eyewitness standing close to the truck at the time the incident occurred.

Esquibel contends Scott committed perjury and this denied him due process. However, Esquibel then says he has no actual knowledge of the

perjury; rather he asks us to infer it. Just because a person changes his opinion does not mean he has perjured himself. The real issue is whether the witness testified accurately at the times he was on the stand (*In re Imbler, supra,* 60 Cal.2d 554, 561). Here Esquibel has not directed our attention to any evidence that Scott did not honestly believe he was hit on purpose when he testified at the first trial. Esquibel asserts Scott's filing of the civil suit before the criminal trial started is contrary testimony tantamount to perjury. However, there is no evidence of the civil complaint being verified; if it is not, it was not given under oath and statements contrary to its allegations are not perjury.

The trial court granted the writ saying: "It is clear that he [Esquibel] could not have been convicted if the officer [Scott] had testified at trial the same as he testified at the depositions; . . ." However, Scott's opinions, over objection, would have been inadmissible. Rizzo's testimony about what he observed could be admitted. But, it would be considered with the rest of the evidence, and it might or might not be believed by the jury. Thus, there is no assurance Esquibel would not have been convicted if Scott's later opinion had been allowed at the earlier trial.

Order reversed.

Whelan, J., and Cologne, J., concurred.