[Civ. No. 50184. First Dist., Div. Three. Jan. 27, 1981.]

ALMON BOYD SMITH, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent,
THE PEOPLE, Real Party in Interest.

COUNSEL

Quin Denvir, State Public Defender, and Peter R. Silten, Deputy State Public Defender, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Nathan D. Mihara, Deputy Attorneys General, for Real Party in Interest.

OPINION

WHITE, P. J.—This petition presents the question of whether a trial court may reconsider and vacate an order dismissing a prosecution where there is an allegation that extrinsic fraud or mistake has taken place and that new facts would alter the court's decision. We conclude that at least where no actual fraud has been perpetrated upon the court, a criminal court has no authority to vacate a dismissal entered deliberately but upon an erroneous factual basis.

The issue arises in connection with the decision by this court in *People* v. *Smith* (1980) 103 Cal.App.3d 840 [163 Cal.Rptr. 322], filed March 27, 1980. The defendant there had pled guilty to embezzlement of a rental car and was placed on three years probation with one year in county jail. On appeal he argued that the car was illegally seized as a result of a postbooking search of his mother's wallet in the property facility of the Berkeley city jail. We agreed with the defendant that the search came within no exception to the warrant requirement and that its fruits should have been suppressed. Hearing was denied by the California Supreme Court.

After the remittitur issued, petitioner Smith's attorney and the deputy district attorney prosecuting the case met with Judge Winton McKibben in chambers to discuss the possibility that the prosecution would be dismissed. In open court on July 10, 1980, the prosecutor noted that without the car he would be unable to retry petitioner. The prosecutor and the court were under the impression that there were no

pending appellate matters in the case, defense counsel having so represented. The court entertained and granted the prosecution's motion to dismiss.

Soon thereafter, the prosecutor learned that the Attorney General's office had been processing a petition for certiorari in the United States Supreme Court. In fact, on July 1, 1980, the People filed an application for a stay pending preparation of the petition for certiorari. The State Public Defender's office was aware of the People's petition, but neither trial attorney had been informed.[1] The district attorney's office was aware of the Attorney General's action, but the individual deputy had not been informed.

After learning of the pending United States Supreme Court proceedings, the prosecutor moved to vacate the order of dismissal. At a hearing held July 16, 1980, the events surrounding the dismissal were explained and the trial court granted the motion to vacate, reinstating the charges and continuing the matter to August 15, 1980, to set for trial. This petition followed.

■ Petitioner takes the position that in vacating its previous dismissal the trial court was attempting to correct a judicial, as opposed to clerical, error and that it was without authority to do so. The People argue that the trial court's action was justified by Code of Civil Procedure sections 473 and 1008, was within its inherent powers under Code of Civil Procedure section 128, and was within its equity powers to correct mistakes and rulings caused by extrinsic fraud. The People also argue that the dismissal was invalid because the court did not adequately state its reasons in the minutes (*People* v. *Orin* (1975) 13 Cal.3d 937, 944-945 [120 Cal.Rptr. 65, 533 P.2d 193]).

The limits of a criminal court's power to reconsider a ruling and vacate an order or judgment, though referred to in passing, have to some extent been left open by the California Supreme Court. In its decision in *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d 1262], overruled on other grounds in *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10-11, footnote 6 [136 Cal.Rptr. 409, 559 P.2d 1028], the

---

[1]Though the Attorney General accuses defense counsel of "constructive extrinsic fraud," there was no evidence that counsel was aware of or had any reason to be aware of the Attorney General's pursuit of further appellate remedies. The Attorney General agreed at oral argument that defense counsel was not being accused of a knowing false representation.

court addressed the question of whether a trial court could reopen its ruling on a suppression motion at the request of the defendant. During the course of its discussion, the *Krivda* court observed: "It is true that there are several cases which hold that a court has the inherent power to reconsider, and thereupon to modify, revoke or set aside, a prior order upon determining that its order was erroneous. (See *People v. Eggers*, 30 Cal.2d 676, 692...; *Imperial Beverage Co. v. Superior Court*, 24 Cal.2d 627, 634...; *Harth v. Ten Eyck*, 16 Cal.2d 829, 832-834...; *San Francisco Lathing, Inc. v. Superior Court*, 271 Cal.App.2d 78, 81...; *Big Bear Mun. Water Dist. v. Superior Court*, 269 Cal.App.2d 919, 928...; 2 Witkin, Cal. Procedure (1954), Proceedings Without Trial, § 12, p. 1649.) It has been suggested, however, that the foregoing rule is limited in its application to mere 'procedural' rulings which may be modified at any time before final judgment (see *Greene v. Superior Court*, 55 Cal.2d 403, 405...; *City of San Diego v. Superior Court*, 36 Cal.2d 483, 486...), and is an exception to the general rule that judicial error which occurs in the rendition of orders or judgments which are the fault of judicial discretion, as opposed to clerical error or inadvertence, may not be corrected except by statutory procedure (see *In re Candelario*, 3 Cal.3d 702, 705...; *Minardi v. Collopy*, 49 Cal.2d 348, 352-353...; *Key System Transit Lines v. Superior Court*, 36 Cal.2d 184, 191-196...[dissenting opn. of Traynor, J.].)." (5 Cal.3d at pp. 362-363.)

The *Krivda* court did not reconcile these conflicting decisions because it concluded that the answer to its question lay in the wording of Penal Code section 1538.5, subdivision (i). However, it did note that a recent article examined some of the cases and found them largely irreconcilable (see Goodman, *The Power of the Trial Judge to Change a Prior Ruling on a Motion* (1970) 45 State Bar J. 483).

In resolving the question of whether the trial court may reconsider a prior ruling we must at the outset recognize the differences between civil and criminal matters and between orders having effects upon the trial process and judgments (or orders having equivalent effect). In this case, the trial court's order of dismissal did not merely affect the procedure of a civil trial. It terminated the prosecution against petitioner. If reconsideration was proper, the authority for it should not be lightly drawn from the law of civil procedure.

The decision in *In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729], comes closest to the point presented here.

There the defendant was convicted of selling heroin and had admitted a prior felony conviction. The minutes of the court for the date of judgment and the abstract of judgment recited only that he was convicted of the substantive offense, neither document containing any finding on the prior conviction. After remand to custody, the trial court filed an amended abstract of judgment adding the prior. The *Candelario* court found the amendment to the abstract to be in excess of the court's jurisdiction, concluding that since the abstract did not initially mention the prior, the only inference to be drawn was that the court exercised leniency by declining to make a finding on the prior.

The *Candelario* court rejected a contention that the amendment was a proper correction of clerical error: "It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. (*People v. Schultz* (1965) 238 Cal.App.2d 804, 807. . .; *People v. Flores* (1960) 177 Cal. App.2d 610, 613. . . .) the power exists independently of statute and may be exercised in criminal as well as in civil cases. (*People v. Flores, supra*, at p. 613.) The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. (*In re Roberts* (1962) 200 Cal.App.2d 95, 97. . . .) The court may correct such errors on its own motion or upon the application of the parties. (*People v. Flores, supra*, at p. 613.)

"Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' (46 Am. Jur.2d, Judgments, § 202.) Any attempt by a court, under the guise of correcting clerical error, to 'revise its deliberately exercised judicial discretion' is not permitted. (*In re Wimbs* (1966) 65 Cal.2d 490, 498. . . .)

"An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion. (*Morgan v. State Bd. of Equalization* (1949) 89 Cal.App.2d 674, 682. . .; *Waters v. Spratt* (1958) 166 Cal.App.2d 80, 86. . ., disapproved on another ground in *Kusior v. Silver* (1960) 54 Cal.2d 603, 616. . .; see *Bastajian v. Brown* (1941) 19 Cal.2d 209, 214-215. . . .)

"It cannot be disputed that the amendment in question substantially affects petitioner's rights. . . ." (3 Cal.3d, at p. 705.)

The Attorney General seeks to distinguish *Candelario* on the ground that here there was no judicial error, only a mistake by the parties. However, of the two categories, "clerical error" and "judicial error," suggested by the *Candelario* court, the error here was clearly "judicial." The trial court entered the order it intended. The only claim is that there was fraud or mistake in the inducement to enter the order.

■ The Attorney General's argument that the court may correct an error caused through mistake or fraud depends in part upon provisions of the Code of Civil Procedure and, for the most part, upon civil cases. However, there is clear California Supreme Court authority, *Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260 [44 P.2d 320], to the effect that Code of Civil Procedure section 473 (relief from judgment taken by mistake, inadvertence, surprise or excusable neglect) does not apply to criminal cases. The rationale of *Gonzales* is that only those parts of the Code of Civil Procedure which are expressly made applicable to penal actions are incorporated in the Penal Code. That rationale should apply as well to preclude operation of other Code of Civil Procedure sections cited by the People, such as section 1008 and section 128.[2] (Cf. *People* v. *Glimps* (1979) 92 Cal.App.3d 315, 325, fn. 6 [155 Cal.Rptr. 230].)

■ Whether some nonstatutory equity power exists for a trial court to correct mistakes and vacate fraudulently induced judgments, as the

---

[2]Code of Civil Procedure section 1008 provides in part: "(a) When an application for an order has been made to a judge, or to the court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may, make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order."

Code of Civil Procedure section 128 provides that every court shall have certain powers, including the power to enforce order in its presence, to provide for the orderly conduct of proceedings before it, to compel obedience to its judgments, etc. Section 128 was cited in *People* v. *Superior Court (Greer)* (1977) 19 Cal.3d 255, 261, footnote 4 [137 Cal.Rptr. 476, 561 P.2d 1164], for the proposition that a court has the inherent power to disqualify an attorney. It was also cited in dicta in *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274], in support of the court's contempt powers. However, in *Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143, 148 [74 Cal.Rptr. 285, 449 P.2d 221], the court made clear that section 128 was limited to correction of clerical errors, setting aside judgments or orders inadvertently made and not the result of an exercise of judgment, prevention of the wrongful use of process rightfully issued, and other powers inherently necessary for the court to make its judgments speak the truth and to insure that its orders are carried out in accordance with the court's intentions. Thus, the power to set aside a judgment for extrinsic fraud or mistake clearly could not be derived from Code of Civil Procedure section 128. (*Id.*)

Attorney General suggests, depends upon the meaning of *Candelario, supra*. There the trial court's failure to pronounce judgment on the prior was apparently a mistake; it corrected the abstract shortly after it was prepared. But instead of permitting the trial court to make such a correction the *Candelario* court presumed from silence that the court had intended leniency. A court with inherent power to correct mistakes could certainly have corrected that óne, if mistake it were.

Here, in some ways, the case for prohibiting correction is stronger. When the trial court entered the order of dismissal it was performing the act it intended to perform. The mistake touched only the factual basis for its action. Factual errors prior to judgment probably occur with some frequency. We do not accept the Attorney General's argument that a criminal court has inherent power to routinely vacate its judgments to correct for misapprehensions.[3]

The Attorney General cites *Bloniarz* v. *Roloson, supra*, 70 Cal.2d 143, 147, as authority for the court's inherent equity powers. There a defendant sought to vacate a default judgment entered in municipal court, but he filed his motion after expiration of the six-month period provided by Code of Civil Procedure section 473. The *Bloniarz* court concluded that because the municipal court was not a court of general jurisdiction it did not possess the equity power to set aside a judgment for fraud, mistake, inadvertence, or surprise after the six-month period had run. However, it made broad statements about the equity powers of courts of general jurisdiction: "The power to set aside judgments obtained through extrinsic fraud and mistake is within the equity jurisdiction of a court. [Citation.] Unless limited by statute, this power is a necessary incident of the constitutional grant of general jurisdiction. [Citations.]" (70 Cal.2d, at p. 147.)

The *Bloniarz* dicta, augmented by citation to civil cases, provides little support for the Attorney General's argument. We reiterate that the question here is whether a *criminal* court also possesses broad equity powers which it may exercise after entry of a judgment or order affecting substantial rights of the defendant. Even granting that criminal courts have inherent powers which they may exercise in various contexts, a large step must be taken before concluding that a criminal judgment or an order dismissing a prosecution can be disturbed because

---

[3]We do not reach the question of whether a criminal court may vacate a judgment of dismissal if procured through fraudulent behavior by an officer of the court. The facts presented here in no way suggest such behavior.

of a mistake in the presentation of the operative facts. The tenor of the *Candelario* decision suggests that when the discretionary judicial act has been performed in the defendant's favor, the judgment or order is immune from this kind of trial court attack.[4]

■ The Attorney General's final argument is that the Penal Code section 1385 dismissal was void because no reasons were stated, and that vacation of the dismissal was therefore proper. It is true that section 1385 contains a requirement that reasons for the dismissal be stated in the minutes of the dismissal order, that the Supreme Court has held that this requirement is mandatory (*People v. Orin, supra*, 13 Cal.3d 937, 941, 944-945), and that the trial court here did not state its reasons. However, in *People v. Hunt* (1977) 19 Cal.3d 888, 897, footnote 10 [140 Cal.Rptr. 651, 568 P.2d 376], the Supreme Court stated: "We recognize too that dismissals and strikings are often, if not generally, made 'in furtherance of justice' without a formal statement of reasons therefor. (See *People v. Orin, supra*, 13 Cal.3d 937, 945, fn. 10.) We do not intend by our holding herein to condemn such practices in those cases wherein the People have waived their right to challenge the defective procedure by themselves moving for such dismissals or strikings, or by not having objected thereto when expressly done in open court. [Citations.]" Here, when the deputy district attorney moved to dismiss the prosecution, such a waiver took place.

We conclude that the trial court erred in vacating its order of dismissal and in reinstating the prosecution. Let peremptory writ of mandate issue, directing respondent court to vacate its order setting aside the dismissal.

Feinberg, J., concurred.

SCOTT, J.—I respectfully dissent.

Before the trial court entered its order of dismissal in this case, defense counsel told the court and the prosecutor that no appellate matters were pending. In fact, that representation, although made in good faith, was incorrect. The Attorney General's office was preparing a petition for certiorari with the United States Supreme Court, and had

---

[4]Such an act is to be distinguished from an act in excess of the court's jurisdiction, such as the imposition of an unlawful sentence. Settled authority permits a prosecution attack upon such a sentence. (See *Wilson v. Superior Court* (1980) 108 Cal.App.3d 816 [166 Cal.Rptr. 795], and cases cited therein.)

already filed an application for a stay with that court. Although both the district attorney's office and the State Public Defender's office were aware of the Attorney General's petition, neither trial attorney had been informed. Six days later the prosecutor, having learned of the actual appellate status of the case, requested that the court vacate its order of dismissal, on the ground that there had been a mistake of fact. The majority concludes that under these circumstances, the court had no power to vacate or set aside the order. I disagree.

The majority correctly states that although a trial court has the inherent power to correct clerical errors in its records so as to make those records reflect the true facts, it cannot similarly correct judicial error by amendment. (*In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal. Rptr. 497, 477 P.2d 729].) However, the power of a court to amend its judgments by correcting mistakes is to be distinguished from its power to vacate or set aside a judgment it has rendered. (See 21 Am. Jur.2d, Criminal Law, § 569 et seq.; 46 Am.Jur.2d, Judgments, § 186 et seq., § 679 et seq.) It is the latter which is at issue in this case, and not an attempt to correct judicial error under the guise of correcting a clerical omission. For that reason, *Candelario* is inapposite.

Code of Civil Procedure section 473 provides the procedure whereby a party may seek relief from a judgment or order taken against him through his mistake, inadvertence, surprise, or excusable neglect. As the majority correctly points out, that section has been held inapplicable in criminal cases. (*Gonzales* v. *Superior Court* (1935) 3 Cal.2d 260, 263 [44 P.2d 320].) The majority then questions whether in a criminal case the court has some nonstatutory power to disturb its judgments which encompasses its action in this case. I would conclude that it has.

A court of general jurisdiction has inherent equity power, aside from statutory authorization, to vacate and set aside judgments obtained through extrinsic fraud and mistake; unless limited by statute the power is a necessary incident of the constitutional grant of general jurisdiction. (*Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143, 147 [74 Cal.Rptr. 285, 449 P.2d 221].) Although a motion to vacate pursuant to Code of Civil Procedure section 473 may not be available in a criminal case, in this state a petition for a writ of error *coram nobis* is the equivalent of a motion to vacate the judgment. (*People* v. *Shipman* (1965) 62 Cal.2d 226, 229, fn. 2 [42 Cal.Rptr. 1, 397 P.2d 993]; *People* v. *Wheeler* (1970) 5 Cal. App.3d 534, 536, fn. 2 [85 Cal.Rptr. 242]; see also Witkin, Cal. Crimi-

nal Procedure (1963 & 1978 supp.) § 626 et seq.) To obtain relief by such a writ, the petitioner must show there is some new fact which is not of record and does not go to the merits of the issues. In addition, the petitioner cannot have known of the error at the time of trial, and the fact, if it had been known, must have been one which would have resulted in a different verdict. (*People* v. *Esquibel* (1975) 44 Cal. App.3d 591, 595 [118 Cal.Rptr. 748].) Moreover, the petitioner must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. (*Shipman, supra*, 62 Cal.2d at p. 230.) It is evident, then, that notwithstanding the inapplicability of section 473, the court in a criminal case does have the power to set aside a judgment on a proper showing, and petitioner points to no statute which would make this dismissal order immune from the exercise of that power. Double jeopardy prohibitions would obviously preclude the grant of such relief to the prosecution after a judgment of acquittal, but no such considerations are involved here. I would conclude, therefore, that the trial court did have the inherent power to set aside its order of dismissal in this case.

I would also conclude that it was reasonable for both the prosecutor and the court to rely on defense counsel's good faith representations as to the status of the case. As a result of those representations, defense counsel, the prosecutor, and the court all labored under the same mistaken belief that no appellate proceedings were pending. It is apparent that had the prosecutor been aware of the Attorney General's petition, he would not have moved for dismissal. As soon as the prosecutor discovered the truth, he sought to have the court set aside the dismissal. I would conclude that on these facts, the court had the power to vacate its order, and did not abuse its discretion in so doing.

I would deny the writ.

The petition of real party in interest for a hearing by the Supreme Court was denied April 13, 1981. Caldecott, J.,* and Racanelli, J.,* participated therein. Richardson, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.