Filed 8/5/13  P. v. Guerrero CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FRANCISCO JAIR GUERRERO,<br><br>    Defendant and Appellant. | 2d Crim. No. B239559<br>(Super. Ct. No. 1352420)<br>(Santa Barbara County) |

Francisco Jair Guerrero appeals the judgment entered after a jury convicted him of attempting to dissuade a victim from reporting a crime or causing an arrest (Pen. Code,[1] § 136.1, subd. (b)).  The jury also found true allegations that appellant committed the crime for the benefit of the West Park criminal street gang (§ 186.22, subd. (b)(4)), and had suffered a prior serious felony conviction that qualified as a strike (§§ 667, subds. (a)(1), (d)(1), & (e)(1), 1170.12, subds. (b)(1), (c)(1)).  Prior to sentencing, appellant filed a motion for new trial alleging, among other things, that the evidence was insufficient to support the jury's true finding on the gang enhancement allegation.  Immediately after the trial court granted the motion on that ground, the prosecutor requested that the gang enhancement allegation be dismissed and the court proceeded to

---

[1] All further undesignated statutory references are to the Penal Code.

do so.  Appellant was sentenced to 11 years in state prison and was awarded 596 days of presentence custody credit.  He contends on appeal that the evidence is insufficient to support his conviction.  He also contends the court abused its discretion in denying his *Romero*[2] motion and in declining to reduce the substantive offense to a misdemeanor.  The People also appeal, contending the court abused its discretion in dismissing the gang enhancement allegation.  We affirm.

STATEMENT OF FACTS

In 2010, Jennifer Fuentes was living in Santa Maria with her boyfriend Gilbert Montoya.  One night in September of that year, several people came to the house and robbed Fuentes at gunpoint.  The robbers took $5,000 in cash, but Fuentes did not call the police.

On November 24, 2010, Fuentes was at home preparing for the following day's Thanksgiving dinner when she looked out the window and saw two men walking up the driveway.  Fuentes called Montoya and asked if he had invited anyone to come over.  After he answered in the negative, Fuentes called 911.  While she was on the phone with the 911 operator, she saw the men in her backyard.  Fuentes got her young stepdaughter from the bedroom, went to the garage, and got into her car.  When she pulled out of the garage, she saw the two men in a gold Buick that was parked on the side of the house.  She also saw a black Chrysler 300 parked nearby.  As she was driving away, she looked back and saw the Chrysler drive off at the same time as the Buick.  When she returned home later, her kitchen window was broken.  Fuentes called the police and an officer came and took a report.  Fuentes did not identify anyone as a potential suspect.

Fuentes has known appellant, whose nickname is "Cisco," for over 10 years.  Fuentes had a good relationship with appellant and thought of him as a "big brother."  Fuentes was also close with appellant's sister Joaquina Rodriguez, who was a friend and coworker of Montoya's sister Jessica.  Jessica told Rodriguez about the September robbery and the November attempted robbery and mentioned the black

---

[2] (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).)

2

Chrysler.[3] Jessica also told Rodriguez "they were trying to say . . . that [Fuentes] knew who it was" and "had mentioned someone who said it was Boy." "Boy" is the nickname of Jesus Quevado, a member of the West Park criminal street gang who was also known to drive a black Chrysler at the time.[4]

During Thanksgiving dinner, Rodriguez told appellant about the robbery and attempted robbery. Sometime after Thanksgiving, Fuentes received a telephone call from her cousin Christina Sedillo. Fuentes was surprised to receive the call because it was late at night and she and Sedillo were not close. Fuentes drove to her mother's house, where Sedillo was staying. Sedillo was "fidgety and shaky" and repeatedly looked out the window and at her cell phone. Sedillo told Fuentes that appellant had come to her house and "asked her if she could tell [Fuentes] . . . if [Fuentes] had given any names to the police in regards to what had happened the day before Thanksgiving, that someone was going to get in trouble." Fuentes was "confused" because she had not given any names to the police. She was also upset "[b]ecause [she] was being accused of ratting when [she] hadn't" and feared that "something might happen" to her.

After speaking to Sedillo, Fuentes no longer wanted to cooperate with the police. When she spoke to the police again on December 29th and was asked to identify suspects, she said she "did not want to be involved anymore and that [she] wasn't 100 percent sure" who had committed the crime. Fuentes was "afraid" and the whole situation took "a very large emotional toll" on her. She "felt like [she] was being badgered" by the police and did not return their telephone calls because she "didn't know who had done this to [her] and [she] didn't feel that [she] could help them any further."

Sedillo testified under subpoena as a hostile witness. She acknowledged having a conversation with Fuentes sometime around Thanksgiving, and admitted that

---

**3** Rodriguez testified at trial as a prosecution witness. The jury also heard the surreptitiously recorded conversation she had with the police regarding the incident.

**4** Rodriguez knew Boy as an "acquaintance" of appellant's, although she did not know his real name. Fuentes testified that she did not know Quevado, although she had heard of him "[b]y hearsay."

appellant came to her house one night that same month. She denied, however, that she and appellant had spoken about a robbery at Fuentes's house, that he had asked her to pass along a message to Fuentes, or that she had passed along any message to Fuentes.

Santa Maria Police Detective Mark Streker interviewed Sedillo on January 27, 2011. In a recorded conversation that was played for the jury, Sedillo told Detective Streker that appellant showed up at her house sometime around Thanksgiving and told her that someone had robbed Fuentes's home and that she had identified the perpetrator to the police. Appellant told Sedillo she needed to "relay a message to [Fuentes] . . . that she needed to clarify that it wasn't the person that she pointed it out to be . . . ." Although appellant did not give any names, he said "the person that she's saying it is . . . wasn't there or didn't do it, so she needs to clarify with the cops that she . . . was mistaken by . . . the pictures that she [had] seen and she was, I don't know what, wrong."[5]

Detective Streker also testified as the prosecution's gang expert. The parties stipulated that "Boy" Quevado was a West Park gang member. It is a "cardinal rule" of all gangs that individuals who provide information to the police or testify against members of the gang may be disrespected, assaulted, or even killed. Gang members like to intimidate victims and witnesses to prevent them from coming forward.

Detective Streker opined that appellant was an associate, yet not a member, of the West Park gang. He did opine, however, that appellant was an associate of the gang. He reached that conclusion based on the facts that (1) appellant is on good terms with a brother who is a known member of the gang; (2) appellant's cell phone number came up on a cell phone belonging to someone who is a known member of the Nipomo gang; (3) appellant's phone had the phone number for a known member of the Northwest gang; and (4) appellant has Aztec tattoos, which are consistent with gang membership.

---

[5] After appellant's preliminary hearing, Detective Streker received a telephone call from a confidential informant who said that Sedillo had told the informant it was actually "Boy" who had asked her to speak to Fuentes. According to the informant, Sedillo said "she was trying to protect [Boy] because she was closer friends with him" than appellant. Sedillo did not consider it "any big deal to point her finger at" appellant because "she didn't like him[.]" Sedillo denied having such a conversation with the informant.

The detective was not asked to opine whether appellant attempted to dissuade Fuentes for the benefit of the West Park gang, nor did he offer any such opinion.

Detective Streker also testified regarding a jailhouse telephone call appellant made to an unidentified male. In a recorded excerpt that was played for the jury, appellant is heard asking, "[w]hat are they saying out there?" After the other person gave an unintelligible response, appellant asked, "That came from stupid bitch ass Boy, huh?" Appellant then tells the person, "don't believe anything they're saying" and also states, "that mother fucker was at my court and was supposed to testify against me, you know what I mean?"

DISCUSSION

I.

*Sufficiency of the Evidence*

Appellant contends the evidence is insufficient to support his conviction for attempting to dissuade a victim from reporting a crime or causing an arrest under section 136.1, subdivision (b). He claims the evidence at most establishes that he was guilty of the misdemeanor offense of knowingly inducing someone to give false material information or withhold true material information pertaining to a crime, as provided in section 137, subdivision (c).

In reviewing the sufficiency of evidence to support a conviction, we examine the entire record and draw all reasonable inferences therefrom in favor of the judgment to determine whether there is credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) Our review is the same in a prosecution primarily resting upon circumstantial evidence. (*People v. Watkins* (2012) 55 Cal.4th 999, 1020.) We do not redetermine the weight of the evidence or the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We must accept logical inferences that the jury might have drawn from the evidence although we would have concluded otherwise. (*Streeter, supra*, at p. 241.)

5

Section 136.1 provides in pertinent part that "every person who attempts to prevent or dissuade another person who has been the victim of a crime" from "[m]aking any report of that victimization to any peace officer" or "causing or seeking the arrest of any person in connection with that victimization" is guilty of either a misdemeanor or a felony. (*Id.* at subd. (b)(1), (3).) The jury was instructed accordingly. (CALCRIM No. 2622.) Appellant argues that there is no evidence from which the jury could have found he attempted to dissuade Fuentes from "making a report" of her victimization or "causing an arrest" because "[t]he facts show she reported it, he knew that, and he wanted her to clarify her report. Attempting to get someone to clarify a report is not the same as attempting to dissuade someone from reporting or from causing an arrest."

Appellant takes too narrow a view of both the statutory language and the evidence. "Making a report" in this context "generally means notifying the authorities that the crime has occurred *and providing information about the offense*." (*People v. Fernandez* (2003) 106 Cal.App.4th 943, 948 (*Fernandez*), italics added.) Although Fuentes had already reported the crime when appellant conveyed his message to her, the police were still in the process of eliciting information from Fuentes about the incident, most significantly with regard to the identity of the perpetrators. Moreover, appellant did not merely want Fuentes to "clarify her report." The evidence, viewed in the light most favorable to the judgment, demonstrates that appellant's message was directed at convincing Fuentes to either recant her identification of the perpetrators or, if no such identification had been made, refrain from ever making one. The jury could reasonably infer from this evidence that appellant sought to prevent Fuentes from causing the arrest of the perpetrators by dissuading her from providing any information about their identity.[6]

---

[6] Contrary to appellant's claim, it is of no moment whether "Fuentes was in a position to cause an arrest of someone" in that "[s]he was not sure who did it." The issue is whether appellant *attempted to prevent* Fuentes from causing an arrest, such that he is guilty of a violation of section 136.1, subdivision (b). In any event, the jury could infer that Fuentes knew who had committed the crime, yet was dissuaded by appellant's message to refrain from doing so.

*Fernandez*, to which appellant cites, does not compel a contrary result.  The defendant in that case was convicted of attempting to dissuade a witness from reporting a crime under subdivision (b)(1) of section 136.1, based on evidence that he tried to influence the testimony of a witness at a preliminary hearing.  In reversing, we reasoned "that section 136.1, subdivision (b) punishes a defendant's *pre-arrest* efforts to prevent a crime from being reported to the authorities.  Under the current statutory scheme, such conduct is not the equivalent of an effort to prevent a witness from giving testimony after a criminal proceeding has been commenced.  Appellant's attempt to prevent or influence [the witness's] testimony simply is not substantial evidence of conduct proscribed by section 136.1, subdivision (b)(1), although it would have been punishable as an attempt to influence a witness's testimony under section 137, subdivision (c), had it been charged under that section." (*Fernandez, supra*, 106 Cal.App.4th at p. 950, italics added.)

As we have noted, appellant's crime involved pre-arrest efforts to dissuade Fuentes from identifying those who victimized her, thereby preventing their arrest.  Moreover, the misdemeanor offense of knowingly inducing someone to give false material information or withhold true material information pertaining to a crime, as provided in section 137, subdivision (c), proscribes a more general and less serious form of conduct than the crime of which he was convicted.  Appellant did not merely induce Fuentes to withhold information or "change her story."  Rather, he tried to induce a victim to recant her identification of the perpetrator such that the perpetrator would avoid arrest.  His claim that the evidence is insufficient to support his conviction for attempting to dissuade a victim from reporting a crime or causing an arrest under section 136.1, subdivision (b), accordingly fails.

## II.

### *Romero Motion*

Appellant asserts the court abused its discretion in denying his *Romero* motion to strike his prior 2009 conviction for first degree burglary (§ 459).  We disagree.

In the furtherance of justice, a trial court may strike or dismiss a prior conviction allegation.  (§ 1385; *Romero, supra*, 13 Cal.4th at p. 504; *People v. Meloney*

(2003) 30 Cal.4th 1145, 1155.) A trial court's refusal to strike a prior conviction allegation is reviewed under the highly deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) Under that standard, the party seeking reversal must "'. . . clearly show that the sentencing decision was irrational or arbitrary. . . .'" (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978 (*Alvarez*).) It is not enough to show that reasonable people might disagree about whether to strike a prior conviction. (*Carmony*, at p. 378.) Only extraordinary circumstances justify a finding that a career criminal is outside the three strikes law. (*Ibid.*) Therefore, "the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The three strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony, supra*, 33 Cal.4th at p. 378.) When the record shows the trial court considered relevant factors and acted to achieve legitimate sentencing objectives, the court's decision will not be disturbed on appeal. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

The record before us reveals no basis for a conclusion that appellant falls outside the spirit of the three strikes law. As the court noted, "[t]here is a continued pattern of criminal behavior. That pattern continues to get more serious. There is a serious concern about what's in the interest of the protection of the public and the interests of society." The court further noted that appellant's strike conviction was

8

relatively recent; indeed, appellant was still on probation for the offense when he committed the current crime.

Appellant complains that the court failed to consider (1) the facts underlying his strike conviction for first degree burglary; (2) his drug addiction; (3) Fuentes's letter requesting leniency; or (4) his background, character, and prospects. He fails, however, to offer any evidence that the court failed to consider these facts. The court is not required to "'explain its decision not to exercise its power to dismiss or strike' . . . . [Citation.]" (*Carmony, supra*, 33 Cal.4th at p. 376.) Because appellant provides no basis for us to conclude that the court's decision to deny his *Romero* motion was "so irrational or arbitrary that no reasonable person could agree with it" (*id.* at p. 377), his claim that the decision amounts to an abuse of discretion fails.

III.

*Section 17, Subdivision (b)*

Defendant claims the court also abused its discretion in denying his motion to reduce his conviction from a felony to a misdemeanor pursuant to section 17, subdivision (b) (section 17(b)). We are not persuaded.

In considering a section 17(b) motion, the trial court must undertake "an intensely fact-bound inquiry taking all relevant factors, including the defendant's criminal past and public safety, into due consideration; and the record must so reflect." (*Alvarez, supra*, 14 Cal.4th at pp. 981–982.) In addition, the court should consider "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.]" (*Id.* at p. 978.) The trial court should also consider the general objectives of sentencing as stated in California Rules of Court, rule 4.410.[7] (*Ibid.*) To establish an

---

[7] California Rules of Court, rule 4.410(a) sets forth the general objectives of sentencing: "(1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing."

abuse of discretion, appellant bears the burden of demonstrating that the court's decision to deny his section 17(b) motion was so arbitrary or irrational that no reasonable person would agree with it. (*Alvarez,* at pp. 977-978; *Carmony, supra*, 33 Cal.4th at p. 377.)

Appellant asserts that the court's decision "did not give 'individualized consideration' to the offense, the offender, and the public interest." In issuing its tentative ruling, however, the court stated it was denying appellant's section 17(b) motion "for all of the very same reasons" that it denied the *Romero* motion. In its final ruling, the court began by discussing appellant's offense and characterized it as "one of the most serious crimes" because it "undermine[s] the very foundation of the system that we have." The court went on to state that "the seriousness of the underlying offense and the defendant's criminal history as a whole is what the Court is using to deny a [section 17(b)] reduction."

Although appellant also faults the court for "effectively ruling that witness intimidation crimes are always very serious," the ruling cannot fairly be so characterized. Considered in context, the court merely recognized that *this particular offense* was very serious, given the nature of the offense, the facts upon which it was based, and appellant's criminal history, which collectively demonstrated a history of "taking advantage of those around him and those close to him and using his relationships to commit felonies." After considering these factors, the court found it would not be in the interests of justice to reduce appellant's crime to a misdemeanor. The court properly considered the relevant factors and presumably acted to achieve legitimate sentencing objectives in denying appellant's section 17(b) motion. Accordingly, we find no abuse of discretion.

## IV.

### *People's Appeal*

The People contend the court abused its discretion dismissing the gang enhancement allegation pursuant to section 1385. They claim the dismissal amounts to an abuse of discretion because (1) the court failed to comply with the statutory requirement that the reasons for the dismissal must be set forth in an order entered in the minutes; and (2) the enhancement allegation was attached to an alternative penalty

10

provision. The People further claim the court abused its discretion in concluding the evidence was insufficient to support the allegation.

The People's claim overlooks one very salient point: the gang enhancement allegation was dismissed *at the prosecutor's request* after the court granted appellant's motion for new trial as to the enhancement allegation on the ground of insufficient evidence. As framed by the People, the court found the evidence insufficient to support the allegation in its role as "13th juror" and then simply proceeded to dismiss it under section 1385. The record reflects otherwise. After concluding that the evidence was insufficient to support the allegation, the court stated: "So with regard to the motion [for new trial] as to the gang enhancement, the Court is going to grant that. Procedurally I guess that would be then striking it." Presumably, the court would have then proceeded to order a new trial as to the allegation. The prosecutor, however, immediately interjected, "We would ask for dismissal." The court asked whether the prosecutor was requesting dismissal "[o]f the special allegation," and the prosecutor replied, "That's correct, your Honor."

Because the People requested the dismissal, they are estopped from challenging it as an abuse of discretion under the doctrine of invited error. (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 212 ["Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error"]; *People v. Barton* (1995) 12 Cal.4th 186, 198.) They also thereby waived the right to challenge the court's failure to set forth the reasons for the dismissal in an order entered upon the minutes. (*People v. Hunt* (1977) 19 Cal.3d 888, 897, fn. 10; *Smith v. Superior Court* (1981) 115 Cal.App.3d 285, 293.)

In any event, there is no merit to the People's assertion that the gang enhancement allegation could not be dismissed because it was attached to an alternative penalty provision. Section 186.22, subdivision (b)(4)(C), which provides for an indeterminate term of seven years to life, only applies when a gang-related attempt to dissuade a victim or witness is accompanied by an express or implied threat of force.

11

(*People v. Lopez* (2012) 208 Cal.App.4th 1049, 1052.) Because the jury made no such finding here, the alternative penalty provision did not apply. (*Ibid.*)

Nor can it be said the court abused its discretion in granting the new trial motion on the ground of insufficient evidence. We apply a strong presumption that the court properly exercised its discretion in this regard, and we do not disturb the court's ruling unless there is an unmistakable abuse of discretion. (*People v. Davis* (1995) 10 Cal.4th 463, 524.) We assume official duty is regularly performed, and absent a contrary showing in the record we presume the court complied with its duty to review the evidence and make its own determinations. (*People v. Quicke* (1964) 61 Cal.2d 155, 160.) The trial court has broad discretion in determining whether the evidence has sufficient probative value to sustain the verdict, and we draw all factual inferences in favor of the court's decision. (*People v. Dickens* (2005) 130 Cal.App.4th 1245, 1252.) The court's ruling will be reversed "only in those instances when, as a matter of law, there is no substantial evidence" to support it. (*People v. McDaniel* (1976) 16 Cal.3d 156, 178; *Dickens,* at p. 1252.)

The People argue that the court "fail[ed] to consider the record in its totality" when it found that insufficient evidence warranted a new trial on the gang enhancement allegation. The record reflects, however, that the court reviewed all of the evidence in making its ruling. Indeed, the court referenced "every possible nexus there was to a gang in this case," and ultimately found the evidence lacking in that regard. As the court noted, there was no evidence that appellant was a member of any gang and the evidence of his gang association was hardly overwhelming. The court further noted that neither Sedillo's statement nor Fuentes's testimony referred to or otherwise implicated any gang members. While the People point out that the prosecution presented gang expert testimony, the expert never actually opined that the crime had been committed for the benefit of a gang. The People also fault the court for failing to "articulate in what manner the inferences and circumstantial evidence were open to other reasonable conclusions," but no such analysis was a prerequisite to its ruling. The court, in its proper role as "the 13th juror," was not persuaded that the gang enhancement allegation had been

12

proven true beyond a reasonable doubt.  The People fail to meet their burden of demonstrating that this ruling amounts to an abuse of the court's broad discretion.

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


13

Kay S. Kuns, Judge

Superior Court County of Santa Barbara

_____


Lisa M. J. Spillman, under appointment by the Court of Appeal, for Defendant and Appellant Guerrero.

Joyce E. Dudley, District Attorney, Michael J. Carrozzo, Deputy District Attorney, for Plaintiff and Appellant People.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez, Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent People.