[No. B218373. Second Dist., Div. Five. Dec. 22, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL PHILLIP NESBITT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Procedural Background and Discussion, parts B., C., D. and E.

**COUNSEL**

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Scott A. Taryle and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.—**

## INTRODUCTION

Defendant and appellant Michael Phillip Nesbitt (defendant) was convicted on six felony counts based upon the sexual abuse of three of his children.[1] On appeal, defendant contends, inter alia, that the trial court lacked jurisdiction to vacate an order entered in the minutes dismissing counts 4 and 5.

---

[1] There was also evidence that defendant committed an uncharged act of sexual abuse with another child, his youngest.

We hold that the trial court had the inherent authority during trial to reconsider its order dismissing counts 4 and 5 and therefore affirm the trial court's order vacating the dismissal of those counts and reinstating them, as well as the judgments of conviction on those counts. In the unpublished portion of this opinion, we otherwise affirm the judgment, except as to matters regarding the sentence and reimbursement of attorney fees.

## PROCEDURAL BACKGROUND[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

A. *Jurisdiction to Vacate Dismissal Orders*

1. *Background*

On March 2, 2009, after the jury was impaneled, but before opening statements, defendant filed a motion to dismiss counts 1 through 5. Defendant argued, inter alia, that Penal Code section 800[4] time-barred the prosecution of those five counts and that the limitations period was not extended under section 803, subdivision (f), which extends the statute of limitations if the offense involves "substantial sexual conduct, . . . excluding masturbation that is not mutual."[5] According to defendant, the preliminary hearing testimony was insufficient to establish that the offenses charged in counts 1 through 5 involved substantial sexual conduct, excluding masturbation that was not mutual.

---

[*]See footnote, *ante*, page 227.

[4] All further statutory references are to the Penal Code unless otherwise indicated. Section 800 provides: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense."

[5] Section 803, subdivision (f) provides in pertinent part: "(f) [¶] (1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section . . . 288 . . . . [¶] (2) This subdivision applies only if all of the following occur: [¶] . . . [¶] (B) The crime involved *substantial sexual conduct*, as described in subdivision (b) of Section 1203.066, *excluding masturbation that is not mutual.*" (Italics added.) ·Section 1203.066, subdivision (b) provides: "(b) 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."

The trial court heard the dismissal motion on March 3, 2009, just before opening statements.[6] During argument, defendant's counsel limited the dismissal motion to the counts involving one child—counts 4 and 5—both of which alleged the commission of a forcible lewd act on a child in violation of section 288, subdivision (b). The following exchange then occurred between the trial court and defendant's trial counsel: "The Court: I have read the Penal Code section 800 and 803(f)(1) motion. Anybody wish to make any further arguments other than what's listed or set forth in the motion? [¶] [Defense Counsel]: Your Honor, real quickly, with respect to the charges, those being [counts 4 and 5] . . . , I submit on it that with respect to [counts 4 and 5] . . . , the issue, besides everything else that I wrote, and I did mention this also, is that [section] 803. It refers you for the definition of substantial sexual conduct. The first issue is to [section] 1203.066. [Sections] 1203.066 and 803(f) exclude[]—it says substantial sexual conduct as defined in [section] 1203.066, excluding nonmutual masturbation. [¶] So the—in the transcript, which I cited in my [section] 803 motion, was he doesn't describe masturbation, but even if you accept that he does, by saying that, he doesn't describe mutual masturbation. So [section] 803(f) requires it. That's one of the elements, which is substantial sexual conduct, so they don't meet that, so . . . counts [4 and 5] would have to be dismissed as being untimely. [¶] . . . [¶] . . . The Court: Yes. And the crime involved substantial sexual conduct, as described in subdivision b of section 1203.066, excluding masturbation that is not mutual. [¶] [Defense Counsel]: Right. [¶] The Court: This subdivision applies only if all of the following occur as an exclusion to [section] 803. So is there an allegation of substantial sexual conduct, excluding masturbation, that is not mutual as to [defendant] who is charged—or is involved in counts 4 and counts 5, Count 4, forcible lewd act on a child, [section] 288(b) and count 5, forcible lewd act on a child, [section] 288(b) so looking at 1203.066. [¶] [Defense Counsel]: The point of my—or my point, your Honor, is that [section] 803(f), specifically f, says that substantial sexual conduct as defined in both [sections] 1203.066, but then they added that excluding masturbation that is not mutual, and they don't have it in this case. And that's my point. [¶] The Court: I understand. . . . [¶] Okay, so the way I'm reading this, there has to be some other conduct other than masturbation that is not mutual that's an exception. [¶] [Defense Counsel]: Again, in here what it is, is if you go by the transcript; right? [¶] The Court: I go by the complaint. [¶] [Defense Counsel]: Okay. By the complaint. [¶] The Court: And the complaint doesn't say. [¶] [Defense Counsel]: Right. Right. Whereas, say for [another child] it does say."

Following the foregoing exchange, the prosecutor submitted on the motion as to counts 4 and 5. In response, the trial court stated "my indicated [ruling]

---

[6] We note that hearing such a motion at that stage of the proceedings is unconventional and not desirable. (See § 995.)

is to grant the motion and dismiss only as to counts 4 and 5." Both sides then made opening statements and one child not named in counts 4 and 5 began her direct testimony, but did not finish by the end of the day. The minute order for March 3, 2009, reflects that counts 4 and 5 were dismissed that day pursuant to section 1385—"in the furtherance of justice."[7]

The following day, March 4, 2009, the child completed her testimony on both direct and cross-examination. The prosecutor then moved the trial court to vacate its order dismissing counts 4 and 5. The prosecutor provided the trial court with a citation to *People v. Lamb* (1999) 76 Cal.App.4th 664, which concluded at page 682 [90 Cal.Rptr.2d 565] that the term "mutual" in a similarly worded prior version of section 803 included masturbation of the minor victim by the perpetrator. Thus, the prosecutor argued that the trial court had misconstrued the term and that the statute of limitations as to counts 4 and 5 was extended under that section. The prosecutor maintained that the trial court had the inherent power to "reverse itself" on the dismissal motion and that defendant had suffered no prejudice because the child named in counts 4 and 5 had not yet testified. Defendant's trial counsel opposed the motion, citing *People v. Candelario* (1970) 3 Cal.3d 702 [91 Cal.Rptr. 497, 477 P.2d 729] (*Candelario*) and *Smith v. Superior Court* (1981) 115 Cal.App.3d 285 [171 Cal.Rptr. 387] (*Smith*). After hearing further argument, the trial court continued the matter to allow the prosecution more time to present case law on the issue.

Later that same day, the prosecutor presented the trial court with, inter alia, the decision in *In re Anthony H.* (1982) 138 Cal.App.3d 159 [187 Cal.Rptr. 820] (*Anthony H.*) and argued that the orders dismissing counts 4 and 5 were interim orders that could be corrected upon further consideration of the legal issue because jeopardy had not attached and defendant was not otherwise prejudiced. After considering further argument, the trial court ruled that it would "correct" its earlier ruling dismissing counts 4 and 5 and deny defendant's motion to dismiss those counts. The minutes for March 4 reflect that the prosecution's motion to reinstate counts 4 and 5 was granted and that those counts were "reinstated forthwith."

### 2. Analysis

Defendant contends on appeal that the decisions in *Candelario, supra,* 3 Cal.3d 702, and *Smith, supra,* 115 Cal.App.3d 285, control the determination of this issue and require us to conclude that once the dismissal orders were

---

[7] Section 1385 provides, in pertinent part, as follows: "(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes."

entered in the minutes, the trial court lacked further jurisdiction to vacate those orders. The Attorney General distinguishes *Candelario* and *Smith* and asserts that this case is closely analogous to the facts in *Anthony H., supra*, 138 Cal.App.3d 159.

In *Candelario, supra*, 3 Cal.3d 702, the defendant was convicted of selling heroin in violation of Health and Safety Code former section 11501 and admitted the allegation that he had suffered a prior felony conviction. (3 Cal.3d at p. 704.) The sentencing minutes and the abstract of judgment, however, recited only that the defendant was convicted of the heroin offense, without mentioning a true finding on the prior felony conviction. (*Ibid.*) Over a month after the defendant was remanded to custody for delivery to the Department of Corrections, the trial court amended the abstract of judgment to add the prior conviction. (*Ibid.*)

In determining whether the trial court had the jurisdiction to amend the abstract of judgment, the Supreme Court in *Candelario, supra*, 3 Cal.3d 702 observed: "It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. (*People* v. *Schultz* (1965) 238 Cal.App.2d 804, 807 [48 Cal.Rptr. 328]; *People* v. *Flores* (1960) 177 Cal.App.2d 610, 613 [2 Cal.Rptr. 363].) The power exists independently of statute and may be exercised in criminal as well as in civil cases. (*People* v. *Flores, supra*, at p. 613.) The power is unaffected by the pendency of an appeal or a habeas corpus proceeding. (*In re Roberts* (1962) 200 Cal.App.2d 95, 97 [19 Cal.Rptr. 147].) The court may correct such errors on its own motion or upon the application of the parties. (*People* v. *Flores, supra*, at p. 613.) [¶] Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment. The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' (46 Am.Jur.2d, Judgments, § 202.) Any attempt by a court, under the guise of correcting clerical error, to 'revise its *deliberately exercised judicial discretion*' is not permitted. (*In re Wimbs* (1966) 65 Cal.2d 490, 498 [55 Cal.Rptr. 222, 421 P.2d 70].) [¶] An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion. (*Morgan* v. *State Bd. of Equalization* (1949) 89 Cal.App.2d 674, 682 [201 P.2d 859]; *Waters* v. *Spratt* (1958) 166 Cal.App.2d 80, 86

[332 P.2d 754], disapproved on another ground in *Kusior* v. *Silver* (1960) 54 Cal.2d 603, 616 [7 Cal.Rptr. 129, 354 P.2d 657]; see *Bastajian* v. *Brown* (1941) 19 Cal.2d 209, 214–215 [120 P.2d 9].)" (*Candelario, supra*, 3 Cal.3d at p. 705, italics added.)

The court in *Candelario, supra*, 3 Cal.3d 702 determined that the omission of the true finding on the prior felony was an exercise of judicial discretion.[8] Accordingly, the court concluded that the amendment to the abstract was in excess of the trial court's jurisdiction. "[W]e have concluded that the finding of the prior conviction was improperly added by an amendment to the judgment and cannot, therefore, be used to enhance [the defendant's] . . . sentence." "The amendment to the abstract of judgment being in excess of the [trial] court's jurisdiction is ineffective for any purpose." (3 Cal.3d at pp. 705, 708.)

In *Smith, supra*, 115 Cal.App.3d 285, the defendant was convicted of embezzlement of a rental car, but the Court of Appeal reversed the judgment holding that the rental car had been illegally seized as the result of a warrantless search of a wallet belonging to the defendant's mother. (*Id.* at p. 287.) After remittitur, the prosecutor informed the trial court that without the car as evidence, the prosecution would be unable to retry the defendant. (*Ibid.*) Based on a representation by the defendant's counsel, both the trial court and the prosecutor believed that there were no appellate proceedings pending with respect to the Court of Appeal's evidentiary ruling. (*Id.* at pp. 287–288.) Therefore, the trial court granted the prosecutor's motion to dismiss. (*Id.* at p. 288.) Soon thereafter, however, the prosecutor learned that the Attorney General's office had filed a petition for certiorari in the United States Supreme Court challenging the Court of Appeal's ruling. (*Ibid.*) In response, the prosecutor filed a motion to vacate the dismissal order that the trial court granted. (*Ibid.*)

On appeal, the court in *Smith, supra*, 115 Cal.App.3d 285, reversed the order vacating the dismissal. The court began its analysis with a discussion of a trial court's power in a criminal case to reconsider a ruling and vacate a judgment or order. "The limits of a criminal court's power to reconsider a ruling and vacate an order or judgment, though referred to in passing, have to

---

[8] The court in *Candelario, supra*, 3 Cal.3d 702 explained that "[r]eference to the prior conviction must be included in the pronouncement of judgment for if the record is silent in that regard, in the absence of evidence to the contrary, it may be inferred that the omission was an act of leniency by the trial court. In such circumstances, the silence operates as a finding that the prior conviction was not true." (*Candelario, supra*, 3 Cal.3d at p. 706.)

some extent been left open by the California Supreme Court. In its decision in *People* v. *Krivda* (1971) 5 Cal.3d 357 [96 Cal.Rptr. 62, 486 P.2d. 1262], overruled on other grounds in *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 10–11, footnote 6 [136 Cal.Rptr. 409, 559 P.2d 1028], the court addressed the question of whether a trial court could reopen its ruling on a suppression motion at the request of the defendant. During the course of its discussion, the *Krivda* court observed: 'It is true that there are several cases which hold that a court has the inherent power to reconsider, and thereupon to modify, revoke or set aside, a prior order upon determining that its order was erroneous. (See *People* v. *Eggers* [(1947)] 30 Cal.2d 676, 692 [185 P.2d 1]; *Imperial Beverage Co.* v. *Superior Court* [(1944)] 24 Cal.2d 627, 634 [150 P.2d 881]; *Harth* v. *Ten Eyck* [(1941)] 16 Cal.2d 829, 832–834 [108 P.2d 675]; *San Francisco Lathing, Inc.* v. *Superior Court* [(1969)] 271 Cal.App.2d 78, 81 [76 Cal.Rptr. 304]; *Big Bear Mun. Water Dist.* v. *Superior Court* [(1969)] 269 Cal.App.2d 919, 928 [75 Cal.Rptr. 580]; 2 Witkin, Cal. Procedure (1954), Proceedings Without Trial, § 12, p. 1649.) It has been suggested, however, that the foregoing rule is limited in its application to mere "procedural" rulings which may be modified at any time before final judgment (see *Greene* v. *Superior Court* [(1961)] 55 Cal.2d 403, 405 [10 Cal.Rptr. 817, 359 P.2d 249]; *City of San Diego* v. *Superior Court* [(1950)] 36 Cal.2d 483, 486 [224 P.2d 685]), and is an exception to the general rule that judicial error which occurs in the rendition of orders or judgments which are the fault of judicial discretion, as opposed to clerical error or inadvertence, may not be corrected except by statutory procedure (see *In re Candelario*, 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729]; *Minardi* v. *Collopy* [(1957)] 49 Cal.2d 348, 352–353 [316 P.2d 952]; *Key System Transit Lines* v. *Superior Court* [1950)] 36 Cal.2d 184, 191–196 [222 P.2d 867] [dissenting opn. of Traynor, J.].).' (5 Cal.3d at pp. 362–363.)" (*Smith, supra*, 115 Cal.App.3d at pp. 288–289.)

The court in *Smith, supra*, 115 Cal.App.3d 285 then noted a distinction between the power to reconsider in a criminal case and in a civil case. "In resolving the question of whether the trial court may reconsider a prior ruling we must at the outset recognize the differences between civil and criminal matters and between orders having effects upon the trial process and judgments (or orders having equivalent effect). In this case, the trial court's order of dismissal did not merely affect the procedure of a civil trial. It terminated the prosecution against petitioner. If reconsideration was proper, the authority for it should not be lightly drawn from the law of civil procedure." (*Smith, supra*, 115 Cal.App.3d at p. 289.)

Relying on *Candelario, supra*, 3 Cal.3d 702, and noting that decision's distinction between clerical and judicial error, the court in *Smith, supra*, 115 Cal.App.3d 285 concluded that the error before it was judicial. (*Id.* at p. 290.) Accordingly, the court in *Smith* held that "at least where no actual fraud has

been perpetrated upon the [trial] court, a criminal [trial] court has no authority to vacate a dismissal entered deliberately but upon an erroneous factual basis."[9] (*Smith*, at p. 287.)

The Attorney General argues that the instant case can be distinguished from *Candelario, supra*, 3 Cal.3d 702 and *Smith, supra*, 115 Cal.App.3d 285 because those cases involved extrinsic factual error by the trial court, whereas this case involved legal error. According to the Attorney General, that distinction brings this case within the holding in *Anthony H., supra*, 138 Cal.App.3d 159, the case upon which the trial court relied. In that case, on February 22, 1982, after the prosecution had presented its case, the defendant moved to dismiss a robbery count based on insufficient evidence. (*Id.* at p. 161.) The juvenile court orally dismissed the robbery count without hearing argument from the prosecutor. (*Ibid.*) A few moments later, during a discussion of the evidence in support of the grand theft person count, the juvenile court realized it may have made a mistake in dismissing the robbery count and granted the prosecutor leave to brief the issue. (*Id.* at pp. 161, 162–163.) In doing so, the juvenile court stated that it was "setting aside" its prior oral pronouncement of dismissal on the robbery count. (*Id.* at p. 163.)

At the next court session on February 25, the trial court considered the prosecutor's brief on the robbery count and, after further discussion, found the robbery allegation true. (*Anthony H., supra*, 138 Cal.App.3d at pp. 163–164.) The minute order for the February 25 hearing provided that the juvenile court had set aside the previous dismissal of the robbery count, reinstated that count, and found the robbery allegation true. (*Id.* at p. 164.) On March 5, the clerk entered the February 25 minute order simultaneously with the minute order for the February 22 hearing. (*Ibid.*)

In determining whether the juvenile court had the power to vacate its original order dismissing the robbery count, the court in *Anthony H., supra*, 138 Cal.App.3d 159, characterized the crucial question as "whether the robbery allegation was dismissed in an *effective* court order." (*Id.* at p. 164, italics added.) According to the court, an order does not become effective until it is entered in the minutes. "A written order of dismissal must 'be entered in the clerk's register and is effective for all purposes when so entered' (Code Civ. Proc., § 581d). As section 664 of the Code of Civil Procedure states: 'If the trial has been had by the court, judgment must be

---

[9] The dissent stated, "petitioner points to no statute which would make this dismissal order immune from the exercise of that power [to set an order aside]." (*Smith, supra*, 115 Cal.App.3d at p. 295 (dis. opn. of Scott, J.).)

entered by the clerk, in conformity to the decision of the court, immediately upon the filing of such decision. *In no case is a judgment effectual for any purpose until entered.*' (Italics added.) Witkin states: 'The purpose of the rule is clear: It would be manifestly undesirable to allow judgments to be used or enforced without any official evidence of their terms. The rule goes further, however; until entry, the judge can vacate or change his previously rendered judgment as he sees fit. [Citations.]' (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 50, p. 3215.)" (*Anthony H., supra,* 138 Cal.App.3d at pp. 164–165.)

The court in *Anthony H., supra,* 138 Cal.App.3d 159 then explained that "[w]hen a juvenile court renders and enters an effective order granting a motion to dismiss pursuant to Welfare and Institutions Code section 701.1, the prosecution may not institute a later proceeding which charges the same offense. (Cf., §§ 1118 and 1118.2; also see *Veitch* v. *Superior Court* (1979) 89 Cal.App.3d 722, 727–728 [152 Cal.Rptr. 822], dealing with dismissal of prosecution under section 1118, a similar proceeding in an adult prosecution.) The grant of a Welfare and Institutions Code section 701.1 motion recognizes the prosecution has failed to make a prima facie case and is equivalent to a finding on the merits that the allegations charged are untrue. A dismissal of an allegation in a juvenile court hearing on the basis of insufficient evidence should have the same effect as an acquittal for the purpose of double jeopardy analysis (see *In re James M.* (1973) 9 Cal.3d 517, 520 [108 Cal.Rptr. 89, 510 P.2d 33]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 375–378 [93 Cal.Rptr. 752, 482 P.2d 664])." (*Anthony H., supra,* 138 Cal.App.3d at p. 164.)

After reviewing the record of the February 22 hearing, the court in *Anthony H., supra,* 138 Cal.App.3d 159 concluded that the juvenile court's February 22 ruling dismissing the robbery count was a tentative and interim ruling because the trial court stated on the record at that hearing that it was setting aside the dismissal. (*Id.* at p. 165.) Therefore, according to the court in *Anthony H.,* "the February 25 order, which was signed by both the temporary judge and the presiding judge of the juvenile court, [was] the effective order. Thus, there was no effective order dismissing the robbery count . . . ." (*Id.* at p. 165.) Because the February 22 dismissal order was ineffective, the court in *Anthony H.* upheld both the juvenile court's reconsideration of that order and its reinstatement of the robbery count, concluding that the juvenile had been placed in jeopardy only once. (*Id.* at pp. 165–166.)

We disagree with the Attorney General's contention that *Anthony H., supra,* 138 Cal.App.3d 159 is sufficiently analogous to, and therefore dispositive of,

the jurisdictional issue in this case. In *Anthony H.*, the juvenile court reconsidered its dismissal order before that order was entered in the court's minutes. Thus, the court in *Anthony H.* determined that the juvenile court's oral pronouncement of dismissal was a tentative ruling—not a valid effective order—that could be vacated or set aside by the trial court. Here, because the clerk entered the dismissal of counts 4 and 5 in the minutes prior to the trial court's reconsideration of the order, the rationale supporting the reconsideration in *Anthony H.* does not apply.

We agree with the Attorney General, however, that the decisions in *Candelario, supra,* 3 Cal.3d 702 and *Smith, supra,* 115 Cal.App.3d 285 are distinguishable from this case. In *Candelario*, a final judgment had been entered and the defendant had been sentenced, thereby terminating the entire case in the trial court. And in *Smith*, the dismissal order had the effect of terminating the entire case against the defendant in the trial court.[10] Thus, neither the judgment in *Candelario* nor the dismissal order in *Smith* could be characterized as interim orders of the trial court. They were final judgments on the merits that effectively terminated the prosecutions against the defendants in those cases.

Here, by contrast, the dismissal of counts 4 and 5 occurred midtrial and did not resolve the entire case against defendant. The dismissals were not based on the insufficiency of the evidence, but rather on a statute of limitations defense. Moreover, no final judgment had been entered from which an appeal could have been taken, and, presumably, the prosecution could have refiled the dismissed counts.[11]

This case is closer to the recent decision in *Jackson v. Superior Court* (2010) 189 Cal.App.4th 1051 (*Jackson*). In that case, the defendant was sentenced following judgments of conviction on two felony counts. (*Id.* at p. 1056.) The defendant thereafter filed a petition for a writ of habeas corpus in the Court of Appeal contending that he was entitled to a new trial because the prosecutor had failed to disclose certain evidence in violation of *Brady v. Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194].

---

[10] As noted, the court in *Smith, supra,* 115 Cal.App.3d at page 289 analogized the dismissal order entered in that case to the final judgment in *Candelario, supra,* 3 Cal.3d 702, noting that the dismissal order "terminated the prosecution against [the defendant]."

[11] The double jeopardy clause of the United States Constitution does not bar retrial after a dismissal for reasons other than insufficiency of the evidence or when the dismissal was with the consent of the defendant. (See 1 Witkin and Epstein, Cal. Criminal Law (3d ed. 2000) § 126, p. 473, § 181, p. 538.)

(*Jackson*, at p. 1056.) The Court of Appeal issued an order to show cause returnable in the trial court why the defendant was not entitled to the relief requested. (*Ibid.*) In response, the trial court issued an order granting the habeas corpus petition without specifying the relief to which the defendant was entitled. (*Ibid.*) The prosecution filed a motion for reconsideration arguing that additional facts had come to light. (*Ibid.*) The trial court granted that motion and vacated its previous order granting the habeas corpus petition. (*Ibid.*)

The defendant in *Jackson, supra,* 189 Cal.App.4th 1051 then filed a petition for writ of mandate and/or prohibition (mandate petition) in the Court of Appeal, contending that the trial court had exceeded its jurisdiction by granting the motion for reconsideration and vacating its order. (*Id.* at p. 1056.) The Court of Appeal summarily denied the petition. (*Ibid.*) But the Supreme Court granted review and ordered the Court of Appeal to vacate its order denying the mandate petition and to issue an order directing the trial court to show cause why a writ of mandate should not issue. (*Ibid.*)

In determining the merits of the defendant's mandate petition, the Court of Appeal in *Jackson, supra,* 189 Cal.App.4th 1051 analyzed the power of the trial court to reconsider its order granting the habeas corpus petition. (*Id.* at pp. 1065–1068.) Relying on the earlier decision in *People v. Castello* (1998) 65 Cal.App.4th 1242 [77 Cal.Rptr.2d 314] (*Castello*), the court in *Jackson* began the analysis by noting the scope of a criminal trial court's inherent power to reconsider its rulings. " 'In criminal cases there are few limits on a court's power to reconsider interim rulings. [Citations.]' ([*Castello, supra,*] 65 Cal.App.4th 1242, 1246 [77 Cal.Rptr.2d 314] (*Castello*).) 'The California Supreme Court has often recognized the "inherent powers of the court . . . to insure the orderly administration of justice." [Citations.]' (*Id.* at p. 1247.) 'A court's inherent powers are wide. [Citations.] They include authority to rehear or reconsider rulings: "[T]he power to grant rehearings is inherent,—is an essential ingredient of jurisdiction, and ends only with the loss of jurisdiction." [Citations.]' (*Id.* at p. 1248.) 'A court could not operate successfully under the requirement of infallibility in its interim rulings. Miscarriage of justice results where a court is unable to correct its own perceived legal errors, particularly in criminal cases where life, liberty, and public protection are at stake. Such a rule would be " '. . . a serious impediment to a fair and speedy disposition of causes . . . .' [Citations.]" [Citation.]' (*Id.* at p. 1249.)" (*Jackson, supra,* 189 Cal.App.4th at p. 1065.)

The court in *Jackson, supra,* 189 Cal.App.4th 1051 next explained the effect that the filing of a notice of appeal has on a trial court's jurisdiction. " 'The general rule is that " ' "[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the

appeal *and issuance of the remittitur*" [citation], thereby divesting the trial court of jurisdiction over anything affecting the judgment. [Citations.]' " [Citations.] " 'The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment . . . by conducting other proceedings that may affect it.' [Citation.]" [Citation.]' ([*People v. Superior Court (Gregory)*] 129 Cal.App.4th [324,] 329 [28 Cal.Rptr.3d 276].) [T]his rule applies where habeas corpus proceedings are concerned [citation] . . . .' (*Ibid.*) Thus, a timely filed notice of appeal by the People from an order granting habeas corpus relief by the superior court divests the superior court of jurisdiction over anything affecting the judgment until determination of the appeal and issuance of the remittitur. (*Ibid.*)" (*Jackson, supra*, 189 Cal.App.4th at p. 1065.)

At the time the trial court in *Jackson, supra*, 189 Cal.App.4th 1051 reconsidered its order granting the habeas corpus petition, the time to appeal had not expired and no appeal had been filed. Thus, the court in *Jackson* concluded that the trial court retained the inherent power to reconsider its ruling on the habeas corpus petition. In so concluding, the Court of Appeal said, "[T]he [trial] court had the inherent power to reconsider its order granting the petition for writ of habeas corpus, and that power would only end with its loss of jurisdiction. (*Castello, supra*, 65 Cal.App.4th at p. 1248.) The loss of jurisdiction for purposes of reconsideration of the ruling would occur when the order became final and binding, or when the People filed a notice of appeal from the order. [Citations.] . . . As the People had not yet filed a notice of appeal when the [trial] court granted reconsideration, the [trial] court had retained its inherent power to reconsider and vacate the order granting the petition for writ of habeas corpus." (*Jackson, supra*, 189 Cal.App.4th at pp. 1067–1068.)

As noted, when the trial court in this case reconsidered the dismissal order, the trial was ongoing and no final judgment had been rendered in the case from which an appeal could have been taken. Moreover, the prosecution had not sought relief by an extraordinary writ proceeding and, presumably, could have refiled the criminal charges alleged in the dismissed counts. As a result, the trial court had not been divested of jurisdiction over the cause. It therefore had the inherent power to reconsider the dismissal order, as long as it gave due consideration to the issue. (*Castello, supra*, 65 Cal.App.4th at p. 1250 [to the extent Code Civ. Proc., § 1008 applies to a criminal proceeding, it requires only that trial courts exercise due consideration before modifying, amending, or revoking prior orders].) In reconsidering its dismissal order, the trial court considered the authorities cited by both parties concerning the grounds for the dismissal order and the trial court's power to vacate and reinstate the dismissed counts. After hearing further argument, the trial court

concluded that it had made a legal error in dismissing counts 4 and 5 and that it had the jurisdiction to reconsider those dismissals in light of that error. Thus, the trial court's proper exercise of due consideration establishes that the reconsideration of the dismissal order was an act within its inherent power.

■ That the trial court's dismissal order was reflected in a minute order did not necessarily divest the trial court of jurisdiction to reconsider that order. The determining factor is whether the order is deemed to be final or interim.

In *People v. DeLouize* (2004) 32 Cal.4th 1223 [13 Cal.Rptr.3d 302, 89 P.3d 733] (*DeLouize*), the trial court granted a motion for new trial, and, after the time to appeal that ruling had expired, the prosecution filed a motion to reconsider the court's new trial order. (*Id.* at p. 1227.) The issue for the Supreme Court to determine was whether an order granting a new trial was an interim order that could be reconsidered by the trial court or a final order over which the trial court had no authority to reconsider. The court in *DeLouize* first noted the long-standing rule that, in criminal cases, orders denying new trial motions cannot be reconsidered by the trial court. "This court has held that, in a criminal case, a trial court that has *denied* a motion for a new trial lacks authority to consider and grant a second or renewed motion for a new trial. (*People v. Martin* (1926) 199 Cal. 240 [248 P. 908]; *People v. Fice* (1893) 97 Cal. 459 [32 P. 531]; see also *In re Levi* (1952) 39 Cal.2d 41, 45, fn. * [244 P.2d 403].)[12] But we have not previously decided whether, in a criminal case, a trial court is similarly prohibited from reconsidering an order *granting* a new trial." (*DeLouize, supra,* 32 Cal.4th at p. 1228.)

■ ■ court in *DeLouize, supra,* 32 Cal.4th 1223 then explained the fundamental difference between interim and final orders. "Generally speaking, courts may correct judicial error in the making of interim orders or in limine rulings until pronouncement or entry of a judgment. (See *People v. Jackson* (1996) 13 Cal.4th 1164, 1205 [56 Cal.Rptr.2d 49, 920 P.2d 1254]; *People v. Eggers* (1947) 30 Cal.2d 676, 692 [185 P.2d 1].) On the other hand, judicial error in the making of a final order or judgment 'may not be corrected except pursuant to statutory procedures' or on the limited grounds available for a collateral attack. (*Minardi v. Collopy* (1957) 49 Cal.2d 348, 353 [316 P.2d 952]; accord, *Gill v. Epstein* (1965) 62 Cal.2d 611, 615 [44 Cal.Rptr. 45, 401 P.2d 397]; *Estate of Doane* (1964) 62 Cal.2d 68, 71 [41 Cal.Rptr. 165,

---

[12] "Later decisions have recognized certain exceptions to this general rule. (See *People v. Stewart* (1988) 202 Cal.App.3d 759 [248 Cal.Rptr. 907]." (*DeLouize, supra,* 32 Cal.4th at p. 1228, fn. 1.) In *People v. Stewart,* the court questioned whether the rule prohibiting reconsideration of the denial of a new trial motion was jurisdictional. (*People v. Stewart, supra,* 202 Cal.App.3d at pp. 762–763.)

396 P.2d 581]; *Smith v. Superior Court* (1981) 115 Cal.App.3d 285, 288–290 [171 Cal.Rptr. 387].)" (*DeLouize, supra*, 32 Cal.4th at p. 1231, fn. omitted.)

According to the court in *DeLouize, supra*, 32 Cal.4th 1223, the issue of whether an order is interim should be analyzed in light of the policies underlying the concept of finality of judgments. "Although courts have sometimes used appealability as a test for distinguishing final orders from interim orders (see, e.g., *Robbins v. Los Angeles Unified School District* (1992) 3 Cal.App.4th 313, 317 [4 Cal.Rptr.2d 649]; *Jones v. Sieve* (1988) 203 Cal.App.3d 359, 370 [249 Cal.Rptr. 821]), a better approach here, we think, is to analyze the issue in terms of the policies underlying the general concept of finality. Orders and judgments are deemed final in the superior court, and not subject to reconsideration by that court, to preserve confidence in the integrity of judicial procedures and to avoid the delays and inefficiencies associated with repeated examination and relitigation of the same facts and issues. (See *Custis v. United States* (1994) 511 U.S. 485, 497 [128 L.Ed.2d 517, 114 S.Ct. 1732].) The concept of finality 'rests upon the sound policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination.' (*In re Crow* (1971) 4 Cal.3d 613, 622–623 [94 Cal.Rptr. 254, 483 P.2d 1206]; accord, *In re Rogers* (1980) 28 Cal.3d 429, 438 [169 Cal.Rptr. 222, 619 P.2d 415].) This court has recognized that '[e]ndless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice . . . .' (*Pico v. Cohn* (1891) 91 Cal. 129, 134 [25 P. 970]; accord, *United States v. Throckmorton* (1878) 98 U.S. 61, 68–69 [25 L.Ed. 93]; *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 11 [74 Cal.Rptr.2d 248, 954 P.2d 511].)" (*DeLouize, supra*, 32 Cal.4th at p. 1232.)

The court in *DeLouize, supra*, 32 Cal.4th 1223, characterized an order granting a new trial in a criminal case as interim in nature. "An order granting a new trial is not final in the sense of being a final resolution of the case or a final determination of the defendant's guilt or innocence. On the contrary, an order granting a new trial 'does not finally dispose of the matter.' (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681].) In a criminal case, '[t]he granting of a new trial places the parties in the same position as if no trial had been had.' (Pen. Code, § 1180.) Thus, an order granting a new trial is an interim order in the sense that it requires further proceedings before the case may be resolved and judgment may be pronounced." (*DeLouize, supra*, 32 Cal.4th at p. 1231.) Accordingly, the court in *DeLouize* held that "in this case, the order granting a new trial was an interim order that the trial court could reconsider, even after the time for the prosecution to take an appeal had expired." (*DeLouize, supra*, 32 Cal.4th at p. 1233.)

In contrast to an order that disposes of the matter, such as, for example, an order denying a motion for new trial, the order here was entered at the beginning of the trial based on a nonstatutory motion that was unrelated to the sufficiency of the evidence and challenged only two of the counts—4 and 5. The dismissal order was not final "in the sense of being a final resolution of the case or a final determination of . . . defendant's guilt or innocence." (*DeLouize, supra*, 32 Cal.4th at p. 1231.) There was no factual determination of defendant's innocence on those counts. Additional and significant procedures were required before the case could be resolved fully and finally and judgment pronounced.

██ Under these circumstances, in which the trial court dismissed the two counts based on the incorrect assumption that the limitations period in section 800 applied to them, the trial court had inherent authority during the trial to reverse that ruling, even if entered, when it discovered that the extended statute of limitation in section 803, subdivision (f) applied. The ruling, which was made just one day after entry of the dismissal order, did not offend any of the policies underlying the concept of finality of judgments because it did not involve the delay or inefficiencies associated with repeated examination and relitigation of the same facts and issues.

██ Unlike the judgment and the dismissal order at issue in the decisions upon which defendant relies, the trial court in this case entered the dismissal order well before any final resolution of the case. Thus, those cases arose in distinct procedural contexts following the termination of the proceedings in the trial court, circumstances that distinguish them from this case and explain their jurisdictional holdings. Although it is arguable that the dismissal of two counts constituted a final order as to those two counts, the better rule is that a dismissal of a count on an issue of law, when others are still to be tried, may be viewed as interim and reconsidered, particularly when there is no prejudice to the defendant.

B.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The trial court's order vacating the dismissal orders as to counts 4 and 5 is affirmed. The unauthorized "One Strike" sentence on count 6 is reversed and the order imposing attorney fees is also reversed. The matter is remanded to the trial court with instructions to resentence defendant, reconsidering all

---

* See footnote, *ante*, page 227.

sentencing choices,[18] and to hold a noticed hearing on defendant's ability to pay attorney fees pursuant to section 987.8. In all other respects, the judgment is affirmed.

Armstrong, Acting P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 30, 2011, S190012. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[18] " 'When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme. Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices. [Citation.]' " (*People v. Torres* (2008) 163 Cal.App.4th 1420, 1431 [78 Cal.Rptr.3d 444].)