Filed 9/26/22  P. v. Fischer CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D079585 |
| Plaintiff and Respondent, |  |
| v. | (Super. Ct. No. SCN383174) |
| RICHARD TIMOTHY FISCHER, |  |
| Defendant and Appellant. |  |

APPEAL from an order of the Superior Court of San Diego County, Daniel B. Goldstein, Judge.  Affirmed.

Alan S. Yockelson and John M. Bishop, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

Richard Timothy Fischer pled guilty to four felony counts of assault by a public officer (Pen. Code, § 149),[1] two misdemeanor counts of assault by a public officer (§§ 149, 17, subd. (b)(4)), and one count of false imprisonment (§ 236). The trial court imposed a five-year split sentence, with 44 months to be served in local prison and 16 months to be served on mandatory supervision, with three days of presentence custody credits.

On May 15, 2020, while Fischer was serving his sentence, the trial court approved the parties' stipulation to increase Fischer's presentence custody credits from three to 959, resulting in Fischer's release from local prison to begin serving his term of mandatory supervision. After the People discovered that they were mistaken in stipulating to the additional presentence custody credits, they filed a motion seeking to undo the stipulation. The trial court granted the motion, reduced the amount of presentence custody credits to three as originally ordered, and directed Fischer to report to local prison after completing his term of mandatory supervision. The trial court concluded that it had jurisdiction to grant that relief because the order awarding an additional 956 days of presentence custody credits resulted in an unauthorized "illegal" sentence.

Fischer contends that the trial court lacked jurisdiction to vacate its order awarding an additional 956 days of presentence custody credits because that order did not result in the type of unauthorized sentence that can be corrected after the defendant begins serving a sentence. Fischer further contends that even if we conclude that the trial court had jurisdiction to vacate its award of an additional 956 days of presentence custody credits, it

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

would be fundamentally unjust to require him to serve the rest of his sentence.

We conclude that Fischer's arguments lack merit. We accordingly affirm the trial court's order that vacated the grant of an additional 956 days of presentence custody credits and remanded Fischer to custody to serve out the remainder of his local prison sentence.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Fischer is a former Deputy Sheriff in the San Diego County Sheriff's Department. On February 22, 2018, a criminal complaint charged Fischer with 14 counts based on allegations that while on duty, Fischer made inappropriate physical contact with several women. Fischer posted bail in the amount of $100,000. The Honorable Daniel B. Goldstein was assigned to Fischer's case for all purposes.

In August 2018, while Judge Goldstein was on vacation, the People filed a second criminal complaint against Fischer involving additional alleged victims. In connection with that filing, the People requested and received an order from a different judge, setting Fischer's bail at $2 million. After Judge Goldstein returned from vacation, defense counsel requested at an August 20, 2018 hearing that Fischer's $2 million bail be reduced to $210,000, consistent with the bail schedule.[2] After a lengthy hearing, at which the People argued the bail should remain at $2 million due to the nature of Fischer's alleged

---

[2] Defense counsel argued, "[L]et's reduce bail to something that is rational and within reason. $2 million just boggles the mind." The court noted, "The issue is does the bail amount protect the public and does it ensure the defendant's appearance? Those are the two main concerns that the Court has." Neither defense counsel nor the People requested that Fischer be placed on home detention or be ordered to wear a GPS monitor.

crimes, Judge Goldstein reduced the bail amount to $750,000. He explained, "So my ruling is going to be a little bit split here. What I'm going to do is I'm going to lower bail, but I'm going [to] set it over schedule. And the reason why I'm doing that is I think there's a particular dollar amount that ensures the likelihood of appearance, but also with the conditions I'm going to set on it . . . decrease the likelihood of any danger to the public or danger to the victims. So I'm going to set bail at $750,000. I'm going to require the defendant have GPS, right, and have a monitoring system. . . . So we're going to get him set up. He is going to have a GPS bracelet by Friday." As an additional condition of bail, Fischer was ordered to have no contact with, and to stay away from, any of his alleged victims.

Near the conclusion of the August 20, 2018 hearing, the courtroom clerk came on the record and asked which entity should be used for setting up the GPS monitoring of Fischer:

"THE CLERK: Your Honor, can I verify SCRAM? GPS or CPAC?

"THE COURT: [Probation officer], who is doing SCRAM?

"[PROBATION OFFICER]: SCRAM is different. I think CPAC would be appropriate.

"THE COURT: Okay. We will get that figured out when we get off the record."

"CPAC" refers to the County Parole and Alternative Custody Unit. It was apparently decided during the off-the-record discussion that CPAC was the best entity to use, as the next day Fischer signed a pre-printed "CPAC Electronic Monitoring Application." Two days later, on August 23, 2018, Fischer signed an acknowledgment of CPAC's rules and regulations, which stated he had been accepted into the CPAC program.

4

All of the documents related to the CPAC application and approval are consistent with the trial court's order that Fischer would be placed on GPS monitoring but would not be restricted in his movements other than the requirement to stay away from his alleged victims. First, the sheriff's department form titled "Electronic Monitoring Screening" was filled out to state, "No restrictions to movement other than protected [parties] in [criminal protective orders]. No programs. GPS monitor only." Next, on the CPAC form titled "Participant Checklist," the box was checked indicating "No restricted movement," and a comment provided, "Only movement restrictions will be Unapproved locations (Exclusion Zones) of protected parties." Finally, Fischer signed a preprinted form titled "Rules and Regulations" for "Home Detention Electronic Monitoring," but on that form, several items were crossed out, consistent with CPAC's role being limited to providing GPS monitoring to ensure Fischer stayed away from his alleged victims. Among others, the following items were crossed out: "I shall remain within the interior premises of my residence during the hours designated by [CPAC]"; "Work schedules may only be changed with verification by employer and approval of the electronic monitoring vendor"; and "I will immediately, or as soon as possible, report any illness or circumstance to my CPAC Case Manager that prevents me from adhering to my schedule." There were also deletions of items relating to alcohol and drug prohibitions; consent to warrantless searches; consent to allow CPAC to conduct chemical, blood, breath, saliva or urine testing; prohibition on contact with inmates, gang

members and felons; and consent to allow CPAC to direct enrollment in counseling or treatment programs.[3]

On December 7, 2018, a consolidated information charged Fischer with one count of forcible oral copulation (§ 288a, subd. (c)(2)(A)); one count of first degree burglary (§ 459); 16 counts of assault and battery by an officer (§ 149); one count of sexual battery (masturbation) (§ 243.4, subd. (d)); and one count of false imprisonment (§ 236).

On September 9, 2019, Fischer pled guilty to each of the counts set forth in an amended consolidated information:  four felony counts of assault by a public officer (§ 149), two misdemeanor counts of assault by a public officer (§§ 149, 17, subd. (b)(4)), and one count of false imprisonment (§ 236). The plea agreement stated that the parties agreed to a sentence of up to five years in local prison with the sentence on the misdemeanors to run concurrently with any sentence imposed on the felony counts.

On December 10, 2019, the trial court sentenced Fischer to a five-year split sentence, with 44 months to be served in local prison and 16 months to be served on mandatory supervision.  Although the trial court did not specifically address the issue of presentence custody credits during the sentencing hearing, the minute order from the sentencing hearing and the abstract of judgment stated that Fischer had three days of presentence

---

[3]    As Fischer points out, the following items were not crossed out in the list of rules and regulations that he signed:  (1) "CPAC staff may, without further order of the court, immediately remove me from the program . . . if . . . [¶] . . . I fail to remain within or return to my residence *as stipulated in the agreement*"; and (2) "I will notify my CPAC Case Manager in the event of an emergency situation that necessitates my leaving my residence *at unauthorized times . . . .*" (Italics added.)  However, those items do not conflict with an order limited to GPS monitoring, as both of the items explicitly depend on the incorporation of any *stated restrictions* on Fischer's movements, which in this case undisputedly *did not exist*.

custody credits, which was consistent with the recommendation in the probation officer's report.[4]

On May 15, 2020, the trial court approved a stipulation that was entered into by the parties to significantly amend the number of presentence custody credits to which Fischer was entitled from three to 959 (including conduct credits).[5] The stipulation stated:

> "Custody credits are to be amended and corrected to add 478 days of custody pursuant to *People v. Yanez* for days spent on Sheriff's CPAC electronic monitoring and 478 days of [section ]4019 behavior credits for a total additional 956 days. These credits are to be added to the 3 days credit of jail previously awarded, plus 121 days of custody that Mr. Fischer has served to today's date, April 7, 2020, from his sentencing date of December 10, 2019 for a total of 124 days. Additionally, he is ordered to receive another 124 days of [section ]4019 good behavior credits for a total of 248 days. The 248 days are to [be] added to the 956 days, which equals a total of 1,204 custody days ordered to be credited to Mr. Richard Fischer's sentence as of April 7, 2020."[6]

---

[4] Prior to sentencing, counsel for Fischer filed a response to the probation officer's report, taking issue with the probation officer's calculation of presentence custody credits. Counsel stated, "The probation officer has concluded that Mr. Fischer is entitled to only three (3) days of custody credits. Mr. Fischer disagrees with this calculation since it does not take into account the time that he has been subject to GPS monitoring prior to his sentencing in this case, and it also does not take into account [Penal Code section] 4019 credits." (Italics omitted.)

[5] The judge who signed the stipulation was the Honorable Lorna A. Alksne. Judge Alksne included a handwritten notation under her signature which indicated "with approval of Judge D. Goldstein." This procedure was apparently used because of the pandemic.

[6] In context, it is evident that the stipulation included the reference to *People v. Yanez* (2019) 42 Cal.App.5th 91 because that case serves as authority for including the good behavior (i.e., "conduct") credits pursuant to

7

As a result of the trial court's order approving the stipulation, Fischer was released from local prison and began serving his term of mandatory supervision on May 15, 2020, i.e., the day the stipulation was approved by the trial court.[7]

On July 22, 2020, the People filed a motion to (1) withdraw the stipulation; (2) vacate the order granting the additional presentence custody credits; and (3) remand Fischer to custody to complete the custodial portion of his split sentence.[8] As the People explained, they had entered into the stipulation in error during a confusing period at the beginning of the pandemic based on incomplete information which led them to believe that

section 4019. (*Yanez*, at p. 93 [the "disparity in eligibility for conduct credits between pretrial and postjudgment electronic monitoring home detainees violates equal protection" and therefore a defendant who spends time on presentence home detention "is eligible for conduct credits notwithstanding the Legislature's failure to provide for them in . . . section 4019"].)

[7] Likely due to the pandemic, there was a delay in issuing the minute order showing that the trial court had approved the stipulation and had accordingly amended Fischer's presentence custody credits. Specifically, on June 18, 2020, the trial court (Judge Alksne) issued an ex parte minute order stating that it was amending Fischer's presentence custody credits as provided in the stipulation it approved on May 15, 2020: "602 Actual days" and "602 [section] 4019 credits" for "1,204 Total days custody credits." The minute order stated, "The Court finds that the defendant is entitled to receive the credits stated above and amends the sentence imposed on December 10, 2019, nunc pro tunc to that date." The trial court also corrected the abstract of judgment to reflect the credits.

[8] The People originally contacted the trial court about Fischer's presentence custody credits on June 4, 2020, which was done via email due to disruptions caused by the pandemic. The trial court instructed the People to file a formal motion.

Fischer was on home detention prior to sentencing.[9]  Thus, based on the information available to them at the time, the People agreed with defense counsel that Fischer was entitled to presentence custody credits pursuant to section 2900.5, subdivision (a), which provides for presentence custody credit for "days served in home detention pursuant to Section 1203.016 or 1203.018." (§ 2900.5, subd. (a).)[10]

The People explained that only after the stipulation was approved by the trial court did they learn from later-obtained CPAC records and the reporter's transcript from the August 20, 2018 hearing that Fischer had not been confined on home detention but instead had been released on bail while ordered to undergo GPS monitoring by CPAC. According to the People, the stipulation and the trial court's subsequent order awarding additional credits was invalid because "it impermissibly and incorrectly stipulates that the law permits custody credits for a person who was not ordered to home detention—a situation not authorized by law."

---

[9]    Neither defense counsel, nor the Deputy District Attorney who signed the stipulation, was involved in the case in August 2018 when the trial court made the order setting bail at $750,000 and requiring GPS monitoring.  At the hearing on the motion, the People explained, "[T]his all happened in a very unique circumstance where we had a pandemic, where records weren't available to the parties.  Because of that inaccessibility to the records, at no fault of their own, [the prosecutors] came to the best conclusion they could based upon this information they had.  Unfortunately, it was not complete information because of the pandemic and the lack of accessibility of records."

[10]    Section 2900.5 states, "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody . . . including . . . days served in home detention pursuant to Section 1203.016 or 1203.018, shall be credited upon his or her term of imprisonment."  Section 1203.016 governs post-conviction home detention, while section 1203.018 governs pre-conviction home detention.

Fischer filed an opposition on August 19, 2020, and a supplemental opposition on September 15, 2020. In opposition, Fischer argued, among other things, that (1) he was on home detention within the meaning of section 1203.018 because the GPS monitoring was sufficiently restrictive and was pursuant to a home detention agreement he signed with CPAC; and (2) the trial court did not have jurisdiction to vacate its order awarding the additional presentence custody credits because that order did not result in an unauthorized sentence.

A hearing on the People's motion was held on September 24, 2021, before Judge Goldstein, which was more than a year after the People filed their motion on July 22, 2020. The hearing was delayed due to the pandemic and other factors involving the trial court's calendar availability.

In ruling on the motion, the trial court explained that it had not ordered Fischer to be on home detention, but instead had ordered that Fischer be subject to GPS monitoring, with CPAC as the entity chosen to perform the monitoring. The trial court stated, "What I said was that he was to stay away from certain locations, and I said that he was going to have to have an electronic monitor, and he was going to have a Fourth waiver and surrender his passport and do things like that. And, often, I'll do that, ironically, not to eat up custody credits. That, while the case is pending, I just want to know where a particular defendant is or I want law enforcement to know where he or she is. And, I mean, if you take my order from the dockets and from the transcript and then you look at the CPAC order, the CPAC order is entirely consistent with what I said, right? I mean, they crossed out you have to stay at home because I didn't say it." The trial court also explained that CPAC was the best entity to use for the GPS monitoring because the court wanted someone to watch the GPS monitoring data to

10

make sure Fischer did not go near an alleged victim. "So there was a plethora of victims, right? So if you G.P.S. monitor, who is monitoring the monitor, right? You either engage CPAC or the sheriff's department to do it, right? The sheriff's department would not be—we use those for pretrial or presentencing monitoring systems, but that wouldn't have been a good choice in this case, so CPAC was doing it."

After additional argument from defense counsel, the trial court concluded, "I don't believe the defendant was in custody for the purpose of calculating credits. I just don't." It ruled, "So I do find that the custody credits were awarded illegally to the defendant. I also find that the People's stipulation with the defendant thus was illegal."[11] The trial court therefore ordered Fischer to report to jail on November 21, 2021 (after completing his mandatory supervision time), to finish serving his local prison sentence. The minute order from the hearing states: "The court denies the GPS/CPAC credits. The defendant is ordered to report to central jail on 11/21/21 . . . to serve 949 total days per [section] 1170(h)(5)(a), to commence on 11/21/21, as stated on the record."

Fischer filed a notice of appeal on October 4, 2021.[12]

---

[11] The trial court also specified that it found no bad faith by either the People or the defense, explaining that the pandemic and other logistical difficulties gave rise to the situation that led to the court's approval of the stipulation regarding Fischer's presentence custody credits.

[12] In his reply brief filed April 27, 2022, Fischer represented that he began serving the remainder of the local prison sentence as ordered by the trial court, but that he was then granted bail pending appeal on April 5, 2022.

## II.

## DISCUSSION

A. *The Trial Court Had Jurisdiction to Vacate the Unauthorized Sentence Created by Its Approval of the Parties' Stipulation*

We first consider Fischer's contention that the trial court lacked jurisdiction to vacate its order awarding 956 additional days of presentence custody credits to Fischer.

1. *A Trial Court Has Jurisdiction to Correct an Unauthorized Sentence at Any Time*

Fischer relies on the general rule that "a trial court is deprived of jurisdiction to resentence a criminal defendant once execution of the sentence has commenced." (*People v. Karaman* (1992) 4 Cal.4th 335, 344 (*Karaman*).) However, an exception to this rule applies when the trial court acts to correct an unlawful sentence. Specifically, as our Supreme Court has explained, "where the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or 'unlawful' and may be increased even after execution of the sentence has begun." (*Id.* at p. 349, fn. 15.) " ' "It is well established that when the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the reviewing court." ' " (*People v. Zito* (1992) 8 Cal.App.4th 736, 741-742 (*Zito*); see also *People v. Serrato* (1973) 9 Cal.3d 753, 763 (*Serrato*) [if an unauthorized sentence is imposed, "the law is well settled that such a sentence would have been subject to judicial correction whenever the error came to the attention of the trial court or a reviewing court"], disapproved of on other grounds by *People v. Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1.)

12

Our Supreme Court has "observed that 'a sentence is generally "unauthorized" where it could not lawfully be imposed under any circumstance in the particular case,' and 'commonly occurs where the court violates mandatory provisions governing the length of confinement.' " (*People v. Roth* (2017) 17 Cal.App.5th 694, 702-703 (*Roth*), quoting *People v. Scott* (1994) 9 Cal.4th 331, 354 (*Scott*).) The crucial distinction in determining whether a sentence is unauthorized is whether the error concerns "a sentencing decision that the trial court had the *discretion* to make, although flawed in some way" or whether it concerns "one for which it had *no legal authority*." (*Roth*, at pp. 704-705, italics added.)

The context in which a trial court has jurisdiction to grant relief from an unauthorized sentence includes a post-sentencing motion to vacate brought by the People after the defendant has already begun serving a sentence. Two cases illustrate that a trial court has jurisdiction to grant relief in response to such a motion.

First, in *People v. Gisbert* (2012) 205 Cal.App.4th 277 (*Gisbert*), "[t]he trial court awarded [the defendant] 88 days of presentence custody credits, after defendant pled guilty." (*Id.* at p. 279.) Several weeks after the defendant was sentenced, the People filed a motion to vacate the credits on the ground that the award of credits violated the rule that "[a] defendant is not entitled to presentence custody credits when [the defendant] is charged with a crime while already incarcerated and serving a sentence on a separate, earlier crime." (*Id.* at p. 281.) *Gisbert* held that "[t]he trial court had jurisdiction to entertain the prosecution's motion because an unauthorized sentence may be corrected at any time." (*Id.* at p. 279.)

The second case illustrating the trial court's jurisdiction to rule on a motion by the People to correct an unauthorized sentence is *Wilson v.*

*Superior Court* (1980) 108 Cal.App.3d 816. Our Supreme Court favorably cited *Wilson* for the principle that "where the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or 'unlawful' and may be increased even after execution of the sentence has begun." (*Karaman, supra,* 4 Cal.4th at p. 349, fn. 15.) In *Wilson,* the trial court granted a motion brought by the People to correct an unauthorized sentence that arose from the trial court's erroneous award of presentence custody credits to the defendant after he began serving his sentence. (*Wilson,* at pp. 817-818.) The defendant challenged the trial court's order granting the People's motion on the ground that the trial court lacked jurisdiction to do so " 'save by the regular course of [a timely] appeal.' " *Wilson* rejected the argument, explaining that the trial court properly granted the People's motion because "[i]mposition of 'a sentence not authorized by law . . . [is] subject to judicial correction whenever the error [comes] to the attention of the trial court or a reviewing court.' " (*Id.* at p. 818, quoting *Serrato, supra,* 9 Cal.3d at p. 763.)

Despite this case law, at oral argument Fischer relied on the recent opinion in *People v. King* (2022) 77 Cal.App.5th 629 (*King*) to contend that a trial court *does not* have jurisdiction to correct an unauthorized sentence when, as here, the unauthorized sentence is brought to the trial court's attention in a motion filed by the People after the defendant has begun serving his sentence. As *King* described the law, "the unauthorized sentence doctrine is a principle of waiver rather than jurisdiction," and thus "[t]he doctrine does not itself create jurisdiction for the trial court to rule on a motion challenging the legality of a sentence." (*Id.* at p. 637.) *King* accordingly held that the unauthorized sentence doctrine did not give the trial court jurisdiction to consider the defendant's motion to correct an

14

unauthorized sentence imposed by the trial court more than 30 years earlier, as the trial court lost jurisdiction after the defendant began serving his sentence. (*Ibid*.) *King* premised its understanding of the law on our Supreme Court's opinion in *In re G.C.* (2020) 8 Cal.5th 1119 (*G.C.*).

The issue in *G.C.* was whether the appellate court had jurisdiction in an appeal following an order in a juvenile delinquency proceeding to correct an allegedly unauthorized dispositional ruling made by the juvenile court in a *previous* proceeding concerning *different* offenses, which was not timely appealed. (*G.C.*, *supra*, 8 Cal.5th at pp. 1123-1124.) *G.C.* first set forth a lengthy discussion of why the appeal of the dispositional order from the previous proceeding was not timely. (*Id*. at pp. 1126-1129.) It then turned to an explanation of why the appeal was not saved from untimeliness by the fact that the appellant was contending that the previous dispositional order was an unauthorized sentence. *G.C.* explained that the unauthorized sentence rule " 'is an exception to the *waiver doctrine . . .* , not to the *jurisdictional* requirement of a timely notice of appeal.' " (*Id*. at p. 1129.) As *G.C.* stated, "to invoke this rule the court must have jurisdiction over the judgment." (*Id*. at p. 1130.) *G.C.* explained that the appellate court did not have jurisdiction over the previous dispositional order because there was "no correlation between the [earlier] error and the current judgment on appeal." (*Ibid*.)

*King* derives from *G.C.* the sweeping principle that an unauthorized sentence does not, in itself, confer jurisdiction on a court to address an unauthorized sentence, *even on the trial court that imposed the sentence in the first place*. (*King*, *supra*, 77 Cal.App.5th at pp. 636-637.) We do not read *G.C.* so broadly. *G.C.*'s holding arose in the situation of successive dispositional orders, on different petitions, in the juvenile court, where a juvenile failed to file a timely appeal but then attempted to challenge the

15

order in an appeal from a different proceeding. Our Supreme Court in *G.C.* said nothing about whether a trial court in an adult criminal proceeding has ongoing jurisdiction to correct its *own* unauthorized sentence whenever such a sentence comes to its attention.[13] *G.C.* did not identify, discuss, or purport to disapprove the principle our Supreme Court described in *Karaman*, that "where the court is required to impose a certain minimum term but imposes a lesser term instead, the unauthorized sentence is considered invalid or 'unlawful' and may be increased *even after execution of the sentence has begun*." (*Karaman, supra*, 4 Cal.4th at p. 349, fn. 15, italics added.) In our view, *Karaman* identifies a rule that remains valid and that is directly applicable here: the trial court has jurisdiction to entertain a motion by the People, filed in the trial court after the defendant has started serving his sentence, to correct a sentence that is unauthorized because it is shorter than required by law.[14]

---

[13] Indeed, *G.C.* did not reach the question of whether the juvenile court *itself* would have had jurisdiction to correct an earlier unauthorized dispositional order had it been asked to do so. (*G.C., supra*, 8 Cal.5th at p. 1134, fn. 13.)

[14] We note also that *King* itself limits its holding in a manner that makes it inapplicable to the situation presented by Fischer's case. *King* states, "Our holding here is necessarily limited to the circumstances of this case, involving a motion filed by an incarcerated defendant seeking a substantive change to his sentence after his conviction has become final and where the trial court did not otherwise have jurisdiction. We do not attempt to consider all the potential implications of characterizing the unauthorized sentence rule as a principle of waiver rather than jurisdiction. Instead, our holding is restricted to the proposition that the unauthorized sentence doctrine does not itself create jurisdiction for a trial court to rule on an incarcerated defendant's motion to correct an alleged illegal sentence after the conviction is final and after the execution of the sentence has begun." (*King, supra*, 77 Cal.App.5th

16

2. *The Award of an Additional 956 Days of Presentence Custody Credits to Fischer Was Unauthorized*

Based on the above, to resolve whether the trial court had jurisdiction to vacate its order awarding an additional 956 days of presentence custody credits to Fischer, we must determine whether that order resulted in an unauthorized sentence which "could not lawfully be imposed under any circumstance in the particular case." (*Scott, supra,* 9 Cal.4th at p. 354.) Put another way, we must determine whether, in awarding additional presentence custody credits to Fischer, the trial court "pronounce[d] a sentence which [was] unauthorized by the Penal Code" (*Zito, supra,* 8 Cal.App.4th at p. 741), "for which it had no legal authority" and lacked "the discretion to make" (*Roth, supra,* 17 Cal.App.5th at pp. 704-705).

As a general matter, "[a] sentence that awards custody credits exceeding statutory limits is unauthorized, and may be corrected whenever the error is discovered." (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1184.) The principle that an improper award of presentence custody credits is an unauthorized sentence follows from the fact that a trial court is not afforded any discretion in awarding presentence custody credits. (§ 2900.5, subd. (a); *People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1139 ["The calculation of credits is not discretionary and there are no 'choices.' "]; *People v. Jack* (1989) 213 Cal.App.3d 913, 917 ["the trial court exercises no discretion when determining the days of presentence custody"].) Thus, an improper award of presentence custody credits "could not lawfully be imposed

_____

at pp. 641-642, fn. omitted.) Here, the trial court was not considering a motion by an incarcerated defendant to correct an unauthorized sentence, but rather a motion by the People seeking to correct a sentence that was shorter than required by law, which is precisely the situation covered by *Karaman*. (*Karaman, supra,* 4 Cal.4th at p. 349, fn. 15.)

17

under any circumstance in the particular case." (*Scott, supra,* 9 Cal.4th at p. 354.)

Here, the trial court's order resulted in an unauthorized sentence if Fischer had no legal entitlement to an additional 956 days of presentence custody credits.[15] As we will explain, Fischer was not entitled to those additional presentence custody credits.

In relevant part, section 2900.5, subdivision (a) provides that a defendant is entitled to presentence custody credits for "all days of custody . . . served in home detention pursuant to Section . . . 1203.018." Section 1203.018 applies to "inmates being held in lieu of bail and on no other basis." (§ 1203.018, subd. (a).) It authorizes a county "to offer a program under which inmates being held in lieu of bail in a county jail or other county correctional facility may participate in an electronic monitoring program" if certain enumerated conditions are met. (*Id.,* subd. (b).) The statute allows each particular county to prescribe its own reasonable rules and regulations, but it requires, at a minimum, the following requirements, to which each participating defendant must agree in writing: "(1) The participant shall remain within the interior premises of the participant's residence during the hours designated by the correctional administrator. [¶] (2) The participant shall admit any person or agent designated by the correctional administrator into the participant's residence at any time for purposes of verifying the participant's compliance with the conditions of the detention. [¶] (3) The electronic monitoring may include global positioning system devices or other supervising devices for the purpose of helping to verify the participant's

---

15    Fischer's appellate briefing does not take a position on whether, under the applicable law, he was entitled to an additional 956 days of presentence custody credits.

compliance with the rules and regulations of the electronic monitoring program. . . . [¶] (4) The correctional administrator in charge of the county correctional facility from which the participant was released may, without further order of the court, immediately retake the person into custody if the electronic monitoring or supervising devices are unable for any reason to properly perform their function at the designated place of home detention, if the person fails to remain within the place of home detention as stipulated in the agreement, or if the person for any other reason no longer meets the established criteria under this section." (*Id.*, subd. (d).)

By its express terms, section 1203.018 describes a circumstance in which a defendant is in pretrial custody *in lieu of bail* but is determined by the *county correctional administrator* to be suitable for pretrial home detention. In that circumstance, section 2900.5 requires that the defendant receive presentence custody credits for the time spent on home detention pursuant to section 1203.018. (§ 2900.5, subd. (a).) However, case law relies on constitutional principles of equal protection to *expand* the list of defendants entitled to presentence custody credits while on home detention to those "who are out on bail and subject to electronic monitoring" with terms of release that are "as 'custodial, or restraining' as a statutory home detention program pursuant to section 1203.018." (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1089 (*Gerson*); see also *People v. Raygoza* (2016) 2 Cal.App.5th 593, 602 (*Raygoza*).) As *Raygoza* explained, in section 2900.5, subdivision (a), "the phrase 'pursuant to . . . Section 1203.018' must be read to require the award of custody credit if the home-detained defendant participated in an electronic monitoring program established 'pursuant to' section 1203.018 without regard to the manner in which the defendant came to be assigned to the program. The Legislature could not have intended to

19

exclude home detentions that met the standards outlined in section 1203.018 from section 2900.5's definition of 'in custody' merely because the defendant became a participant as a result of a court order." (*Raygoza*, at p. 601.) "[T]he focus is properly on whether the placement met certain custodial conditions and standards, not the procedure by which the defendant was placed." (*Ibid*.) In both *Gerson* and *Raygoza*, the defendants were subject to the home detention conditions equivalent to those imposed by section 1203.018 because they were ordered to be confined to their homes at all times except for certain defined exceptions, and were otherwise subject to electronic monitoring and supervision. (*Raygoza*, at p. 600 [there was no "dispute that appellant's electronically-monitored confinement was subject to the conditions described in section 1203.018: he was tagged with an electronic monitor, he was required to remain in his home during the hours designated by the administrator"]; *Gerson*, at p. 1090 ["Gerson was required to remain in his home during the hours designated by the court."].)

Here, as the trial court properly ruled, Fischer did not spend any time on pretrial home detention under either of the circumstances entitling a defendant to presentence custody credits based on section 1203.018. First, Fischer was not selected by a county correctional administrator to participate in a pretrial home detention program *in lieu of bail*, as he was continuously released on bail pending his conviction and sentencing. Second, the trial court did not order that, as a condition of bail, Fischer be placed *on any type* of home detention. (*Raygoza, supra*, 2 Cal.App.5th at p. 602; *Gerson, supra*, 80 Cal.App.5th at p. 1089.) Instead, as the trial court confirmed by reviewing the reporter's transcript from the August 20, 2018 bail-review hearing, it ordered Fischer to be placed in a GPS monitoring program to ensure that he kept away from his alleged victims. The trial court also reviewed the

documents created by CPAC to confirm that CPAC acted in conformity with the trial court's order to limit its role to conducting GPS monitoring of Fischer. The forms revealed that although CPAC apparently created some confusion by using the same forms for its GPS monitoring of Fischer as it uses for its implementation of home detention orders, those forms were modified to strike out all of the items relating to home detention. Further, the relevant forms implementing CPAC's monitoring of Fischer stated: "No restrictions to movement other than protected [parties] in [criminal protective orders]. No programs. GPS monitor only"; and "Only movement restrictions will be Unapproved locations (Exclusion Zones) of protected parties."

As the trial court determined, the undisputed facts showed that it did *not* order Fischer to participate in home detention *of any type*, and consistent with that order, CPAC never confined Fischer to his home *in any manner*. Therefore, as a matter of law, Fischer was not entitled to any presentence custody credits pursuant to section 2900.5 as someone "out on bail and subject to electronic monitoring" with terms of release that are "as 'custodial, or restraining' as a statutory home detention program pursuant to section 1203.018." (*Gerson, supra,* 80 Cal.App.5th at p. 1089.) The trial court's award of an additional 956 days of presentence custody credit for the time that Fischer was subject to GPS monitoring by CPAC was accordingly an unauthorized sentence that the trial court had the jurisdiction to correct at any time. (*Gisbert, supra,* 205 Cal.App.4th at p. 281.)

3.     *No Application of Disputed Facts and No Exercise of the Trial Court's Discretion Was Involved in Determining That Fischer Was Not Entitled to the Additional Presentence Custody Credits*

In arguing that the trial court lacked jurisdiction to vacate its order granting additional presentence custody credits, Fischer does not attempt to

argue that he was, in fact, entitled to those credits. Instead, Fischer contends that because his entitlement to the credits was *a factual issue*, the trial court did not have jurisdiction to vacate the award of additional credits as an unauthorized sentence.[16]

For this argument, Fischer relies principally on statements made by our Supreme Court in *People v. Welch* (1993) 5 Cal.4th 228, 235 and *Scott*, *supra*, 9 Cal.4th at page 354. *Welch* observed that the case law discussing " 'unauthorized sentence' and 'excess of jurisdiction' concepts" "generally involve pure questions of law that can be resolved without reference to the particular sentencing record developed in the trial court" and arise from an "unwillingness to ignore clear and correctable legal error." (*Id*. at pp. 235, 236.) Later, our Supreme Court in *Scott* cited *Welch* in stating that an unauthorized sentence may be corrected when the "error is 'clear and correctable' independent of any factual issues presented by the record at

16 Fischer states that no such jurisdictional deficiency existed with respect to the trial court's approval of the parties' May 15, 2020 stipulation awarding additional presentence custody credits after Fischer began serving his sentence, as a modification in response to a request by a defendant is authorized by section 1237.1, which states that "[n]o appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court, which may be made informally in writing." (§ 1237.1.) The People have not disputed that the trial court had jurisdiction to act on the parties' stipulation awarding additional presentence custody credit to Fischer, and we take no position regarding the trial court's jurisdiction to do so, whether under section 1237.1 or on any other basis.

sentencing." (*Scott*, at p. 354, citing *Welch*, at p. 236.)[17] Seizing on these statements, Fischer contends that the trial court's award of the additional presentence custody credits to him, even if erroneous, did not qualify as the type of unauthorized sentence that can be corrected by the trial court at any time because the trial court's analysis "could not . . . be undertaken without addressing and evaluating factual matters in the record." According to Fischer, in assessing whether it improperly approved the stipulation awarding additional presentence custody credits to Fischer, the trial court "was considering, assessing and weighing facts."[18]

---

[17] We note that whatever *Welch* and *Scott* intended by their reference to "pure questions of law" (*Welch*, *supra*, 5 Cal.4th at p. 235) and errors that are " 'clear and correctable' independent of any factual issues presented by the record at sentencing" (*Scott*, *supra*, 9 Cal.4th at p. 354), other case law from our Supreme Court establishes that a court *may* look to the factual record in correcting an unauthorized sentence, as long as the facts are *undisputed*. Specifically, Fischer cites *Neal v. State* (1960) 55 Cal.2d 11, as a "seminal case" establishing that a sentence ordered in excess of a court's jurisdiction may be corrected at any time. But, in *Neal*, our Supreme Court looked to the *undisputed facts* underlying the defendant's conviction to determine whether one of the counts for which the defendant was sentenced should have been stayed pursuant to section 654 because it arose from the same act or omission as another count. (*Neal*, at pp. 17-21.) Following *Neal*, "[i]t is well settled . . . that the court acts in 'excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654" (*Scott*, at p. 354, fn. 17), which is necessarily a fact-based inquiry.

[18] To support his contention that a court may not correct an unauthorized sentence if it is required to refer to the factual record to do so, Fischer also quotes from inapposite cases, which we reject as inapplicable authority because they have nothing to do with the correction of an unauthorized sentence. (*Smith v. Superior Court* (1981) 115 Cal.App.3d 285, 287 [in the absence of fraud, a trial court may not reconsider and vacate *an order dismissing a prosecution* due to newly presented facts]; *People v. McGee*

23

We reject Fischer's argument because the trial court did not resolve any disputed factual issues at the September 24, 2021 hearing when it granted the People's motion to vacate the award of the additional presentence custody credits. Instead, the trial court's ruling was based on the undisputed trial court record. Specifically, the trial court examined the transcript from the August 20, 2018 bail-review hearing *to confirm* that it did not place Fischer on home detention as a condition of bail. The trial court further reviewed the undisputed CPAC records *to confirm* that CPAC followed the trial court's order that Fischer be subject to GPS monitoring to ensure he stayed away from his alleged victims. Based on those undisputed facts, Fischer was not eligible, as a matter of law, to receive presentence custody credits for the period during which he was subject to GPS monitoring by CPAC. The award of the additional presentence custody credits was therefore an unauthorized sentence, which the trial court had jurisdiction to correct at any time.

Fischer cherry-picks certain statements made by the trial court during the September 24, 2021 hearing to give the impression that the trial court's order during the August 20, 2018 bail-review hearing was unclear as to whether Fischer was being placed on home detention. For example, in trying to understand why the parties had stipulated that Fischer was entitled to additional presentence custody credits, the trial court stated on September 24, 2021 that it was "entirely possible" that it had made "an unclear order." However, based on our review of the record, there was nothing ambiguous about the trial court's order at the August 20, 2018 bail-review hearing. Fischer was ordered to be subject to a GPS monitor to ensure that he stayed

---

(1991) 232 Cal.App.3d 620, 623-626 [the trial court did not have jurisdiction to vacate its order allowing the defendant *to withdraw his guilty plea* after it conducted a factual reevaluation].)

away from the alleged victims, and CPAC carried out that monitoring as ordered by the trial court.

Fischer also relies on several cases which held that the sentence at issue could not be categorized as an *unauthorized* sentence because the issue was whether the trial court made an erroneous *discretionary* sentencing decision. (*People v. Fond* (1999) 71 Cal.App.4th 127, 133-134 [rejecting the People's contention that the trial court ordered an unauthorized sentence after determining that a certain sentence would be cruel and unusual, as "the trial court relied on its view of the facts in determining the mandated sentence to be cruel and unusual"]; *In re Wimbs* (1966) 65 Cal.2d 490, 498 [the trial court did not have jurisdiction after sentence was pronounced to change a consecutive sentence to a concurrent sentence because that ruling was "an attempt, in excess of the court's power, to revise its deliberately exercised judicial discretion"]; *Scott*, *supra*, 9 Cal.4th at p. 355 [an unauthorized sentence does not arise based on fact-specific errors by the trial court in making the *discretionary* decision to aggravate a sentence and impose consecutive terms]; *Welch*, *supra*, 5 Cal.4th at p. 236 [in challenging unreasonable probation conditions, the defendant was not challenging an unauthorized sentence because the defendant "essentially argue[d] only that the court exercised its otherwise lawful authority in an erroneous manner under the particular facts."].) Those cases are inapposite here because the trial court was not making a *discretionary* decision in determining whether Fischer was entitled to the additional presentence custody credits. Instead, it determined, *as a matter of law*, that Fischer had no entitlement to presentence custody credits during the time he was subject to GPS monitoring.

25

In sum, Fischer was not entitled to the additional presentence custody credits as a matter of law, and the trial court therefore had jurisdiction to correct the unauthorized award of those credits.

B.     *The Trial Court's Order Returning Fischer to Local Prison to Complete His Sentence Was Not Fundamentally Unjust*

Fischer argues that even assuming we conclude the trial court had jurisdiction to vacate the award of the additional presentence custody credits, it would be fundamentally unjust to require Fischer to return to jail to complete his local prison sentence.

In support of his argument, Fischer relies on *People v. Tanner* (1979) 24 Cal.3d 514.  In *Tanner*, the trial court struck a firearm-use finding and then ordered that the defendant be placed on probation, including a one-year jail term.  (*Id.* at p. 518, fn. 1.)  After the defendant completed the jail term and complied with probation, our Supreme Court ruled that the trial court did not have the discretion, in furtherance of justice, to strike the firearm-use finding, meaning that the defendant should not have been placed on probation with a *jail* term but instead should have been ordered to serve a *prison* term.  (*Id.* at p. 521 ["the trial court erred in striking the use finding and sending defendant to county jail rather than to prison"].)  Nevertheless, our Supreme Court concluded that it would be unfair and unjust to order the defendant to serve a prison term after he had already successfully complied with probation and completed the erroneously ordered jail term.  (*Id.* at p. 522 ["Mr. Tanner having complied with his conditions of probation including one year's stay in county jail we determine a second incarceration would be unjust."].)

Our Supreme Court has subsequently questioned the correctness of *Tanner*, although it has declined to decide whether *Tanner* remains good law. (*People v. Statum* (2002) 28 Cal.4th 682, 695-697 (*Statum*); *People v. Clancey*

(2013) 56 Cal.4th 562, 585-586 (*Clancey*).) "Since *Tanner* was decided, we have never relied on it to pretermit the correction of a sentence that was illegally or improperly imposed. This is not surprising. Four months after *Tanner* was decided, the Fifth Circuit Court of Appeals vacated the panel decision on which *Tanner* had relied. The sole purpose of the rehearing en banc was to disavow the passage that *Tanner* had quoted. (*United States v. Denson* (5th Cir. 1979) 603 F.2d 1143, 1145[.])" (*Statum*, at p. 696; accord, *Clancey*, at pp. 585-586.) Our Supreme Court has agreed with the reasoning employed by the Fifth Circuit in rejecting the case on which *Tanner* relied. " ' "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." ' [Citation.] We are unaware of any authority that provides 'the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. . . . His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.' [Citation.]" (*Statum,* at p. 696; accord, *Clancey*, at p. 586.)

Further, our Supreme Court has "observed that Court of Appeal decisions ha[ve] subsequently 'limited *Tanner* to circumstances in which (1) the defendant has successfully completed an unauthorized grant of probation; (2) the defendant has returned to a law-abiding and productive life; and (3) "unusual circumstances" generate a "unique element" of sympathy, such that returning the defendant to jail "would be more than usually painful or 'unfair.' " ' " (*Clancey*, *supra*, 56 Cal.4th at p. 586.) In both *Statum* and *Clancey*, our Supreme Court found it unnecessary to decide whether *Tanner* remains good law because no unjust circumstances were

presented, even assuming *Tanner* remains valid law.  (*Clancey*, at p. 586; *Statum*, *supra*, 28 Cal.4th at p. 696, fn. 5.)

Fischer acknowledges our Supreme Court's criticism of *Tanner*, *supra*, 24 Cal.3d 514, but he points out that *Tanner* has not been overruled.  Fischer contends that his case is "one [of] the very rare cases" that satisfies *Tanner*'s requirements because he has been "jerked around between his home and county jail."  Citing *People v. Lockridge* (1993) 12 Cal.App.4th 1752, 1760, he contends he has been " 'peculiarly put upon by errors in the judicial system.' "

We reject Fischer's argument based on our Supreme Court's holding in *Clancey*.  Like Fischer, the defendant in *Clancey* was released from prison earlier than he should have been due to an error in calculating his presentence custody credits.  (*Clancey*, *supra*, 56 Cal.4th at pp. 584-585 [the trial court improperly "believed defendant could be made eligible for credits at [an] accelerated rate once it dismissed . . . the disqualifying allegation that defendant had previously suffered a serious or violent felony conviction," and "defendant has already been discharged from custody"].)  *Clancey* determined the situation did not give rise to the type of unfairness identified in *Tanner* and thus was not grounds for an order relieving the defendant from serving the sentence required by law.  *Clancey* explained, "The unfairness in *Tanner* arose from the prospect of the defendant serving a specified term in prison when he had already 'complied with his conditions of probation—including one year's stay in county jail.'  Under those circumstances, we said 'a second incarceration would be unjust.' [Citations.]  Here, by contrast, . . . there is no prospect that Clancey would be asked 'to now serve a second term for his criminal act' [citation] or to 'suffer a punishment in excess of the legal maximum.' [Citation.] . . . All that occurred here is that his prison term was erroneously *calculated;* the days of credit erroneously awarded were days

that he should have—but did not—serve in custody.  Because those days were not served in county jail or on probation, no issue of a 'second incarceration' or 'second term' arises."  (*Clancey*, at pp. 586-587.)  Here, as in *Clancey*, Fischer will not be serving a *second* term of incarceration; he will simply be *completing* his now-correctly-calculated  local prison term.  It is not fundamentally unjust to require Fischer to do so.

DISPOSITION

The trial court's order vacating its award of an additional 956 days of presentence custody credits  and remanding Fischer to custody to complete serving his local prison term is affirmed.


IRION, Acting P. J.

WE CONCUR:



DATO, J.



BUCHANAN, J.